## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

WILL CRUZ, *for himself and others*
*similarly situated*,

      Plaintiff,

v.                                                                    Civ. No. 22-857 GJF/KRS

AERSALE, INC.,

      Defendant,

v.

LAUNCH TECHNICAL WORKFORCE
SOLUTIONS, LLC,

      Third-Party Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

This is the latest case before this Court in which an employer seeks to hold a former employee to what it says was his promise to arbitrate any claims that arose out of his employment. The employer's efforts to do so have been hampered here by an arbitration provision that it drafted itself, but which the reasonable reader may consider inartful, internally inconsistent, and likely to leave unanswered almost as many questions as it answers. Peering through the haze occasioned by the arbitration provision's lack of clarity, the primary combatants in this skirmish disagree on much: for example, whether the provision governs the claims in this lawsuit at all, whether the movant as third-party defendant can even seek the relief it requests, whether the provision fails for lack of consideration, whether the provision would deny the employee a forum in which he could effectively vindicate the statutory rights he has invoked here, and whether any term of the arbitration provision found unenforceable can be severed or waived with the remainder left intact.

Were this case being litigated somewhere other than the Tenth Circuit, this Court may well have had to weigh in on each question raised in the briefing and at oral argument.  For the reasons that follow, however, the Court believes that controlling Tenth Circuit law compels the conclusion that arbitration under the provision in dispute would deprive the employee of an effective forum to vindicate his rights under the Fair Labor Standards Act. The Court further concludes that, rather than severing the offending provisions from the agreement or permitting the employer belatedly to waive their enforcement, the better remedy is to deny arbitration of the employee's claims altogether.

## BACKGROUND

Third-Party Defendant Launch Technical Workforce Solutions, LLC ("Launch") is a staffing company that supplied aircraft mechanics and other technicians to Defendant AerSale, Inc. ("AerSale") for its operations in New Mexico. ECF 21 ¶¶ 2, 4-5, 15.  Under a Staffing Services Agreement ("SSA") between AerSale and Launch,[1] these companies agreed to arbitrate disputes between them and "defend [and] indemnify [the other,] . . . from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by [its own] breach of th[e] Agreement[.]" ECF 16 §§ 9.1–2; *see also id*. § 10.12.

In August 2020, Plaintiff Will Cruz ("Cruz") executed an Employment Agreement with Launch. ECF 22-1, Ex. B. The next month, Launch placed Cruz with AerSale at one of its New Mexico facilities. ECF 35-2 ¶¶ 3–4.  Pursuant to its SSA with AerSale, Launch was responsible for paying its employees their wages and benefits in compliance with all applicable law.  *See* ECF 22-1, Ex. A at § II.1 (2015 SSA); ECF 16, Ex. A at § 2.8 (2019 SSA).

---

[1] Launch and AerSale entered into at least two SSAs and dispute which version applies to this suit. The Court agrees with their counsel, however, that it need not decide which agreement applies because each agreement contains a sufficiently similar arbitration and indemnification clause.

Cruz's Employment Agreement included an arbitration provision under the heading "DISPUTE RESOLUTION," which appears in full here:

> If an employment dispute arises while you are employed at LAUNCH, you agree to submit any such dispute arising out of your employment or the termination of your employment (including, but not limited to, claims of unlawful termination based on race, gender, age[,] national origin, disability, breach of contract or any other bias prohibited by law) exclusively to binding arbitration under the federal Arbitration Act, 9 U.S.C., Section 1. Similarly, any disputes arising during your employment involving claims of unlawful discrimination or harassment under federal or state statutes shall be submitted exclusively to binding arbitration under the above provisions. This arbitration shall be the exclusive means of resolving any dispute arising out of your employment or termination from employment by LAUNCH or you, and no other action can be brought by employees in any court or any forum.

> By simply accepting or continuing employment with LAUNCH you automatically agree that arbitration is the exclusive remedy for all disputes arising out of or related to your employment with LAUNCH and you agree to waive all rights to a civil court action regarding your employment and the termination of your employment with [LAUNCH]; only the arbitrator, and not a judge nor a jury, will decide the dispute.

> If you choose to dispute your termination or any other alleged incident during your employment, including but not limited to unlawful discrimination or harassment, you must deliver a written request for arbitration to LAUNCH within one (1) year from the date of termination, or one (1) year from the date on which the alleged incident(s) or conduct occurred, and respond within fourteen (14) calendar days to each communication regarding the selection of an arbitrator and the scheduling of a hearing. If LAUNCH does not receive a written request for arbitration from you within one (1) year, or if you do not respond to any communication from LAUNCH about the arbitration proceedings within fourteen (14) calendar days, you will have waived any right to raise any claims arising out of the termination of your employment with LAUNCH, or involving claims of unlawful discrimination or harassment, in arbitration and in any court or other forum.

> Unless agreed otherwise, any arbitration hearings will take place in the last county (or parish) last worked by employee.

> You and LAUNCH shall each bear respective costs for legal representation at any such arbitration. The cost of the arbitrator and court reporter, if any, shall be shared equally by both parties, or as determined by the arbitrator.

> My signature on this document acknowledges that I understand the terms and conditions of this Agreement. I further understand the above Arbitration Policy and

agree to abide by its conditions. I also acknowledge that I understand my employment is at-will and may be terminated at any time, with or without reason, by either LAUNCH or myself. I further agree that, in accordance with LAUNCH's Arbitration Policy, that I will submit any dispute — including but not limited to my termination — arising under or involving my employment with LAUNCH to binding arbitration within one (1) year from the date the dispute first arose. I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with LAUNCH or the termination of that employment. I agree that I will be entitled to legal representation, at my own cost, during arbitration. I further understand that I will be responsible for half of the cost of the arbitrator and any incidental costs of arbitration.

ECF 22-1, Ex. B.[2]

In November 2022, Cruz brought this case only against AerSale, the company for which he was providing services. He did not sue Launch, however, the staffing company with which he had an employee agreement. ECF 1. On behalf of himself and all others similarly situated, Cruz alleges that AerSale failed to pay proper overtime rates required both by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. § 50-4-22. ECF 1 ¶¶ 80–91. His proposed FLSA collective includes "[a]ll hourly AerSale employees in New Mexico who were paid 'straight time' for overtime at any point in the past 3 years." *Id.* ¶ 76. His proposed NMMWA class is similarly defined as "[a]ll hourly AerSale employees in New Mexico who were paid 'straight time' for overtime." *Id.* ¶ 79.

Three months after being sued, AerSale filed a Third-Party Complaint against Launch in which it asserted claims for breach of the parties' SSA, contribution, and indemnification. ECF 16 ¶¶ 19–33. The Third-Party Complaint asserts that Launch breached the SSA "in the event Launch did not pay [Cruz or members of the putative class] overtime wages for any hours worked in excess of 40 hours per week." *Id.* ¶ 21. Launch answered the Third-Party Complaint and separately moved to compel Cruz to arbitrate his claims under the Employment Agreement he entered into with

---

[2] For clarity's sake, the Court will refer to this provision as the "arbitration provision."

Launch. ECFs 21, 22–23.[3]

In its motion to compel, Launch argues that "Cruz agreed to arbitrate any dispute arising under, involving, or relating to his employment with Launch."  ECF 23 at 5.[4] Launch insists that this agreement applies to *any* claims against *any* defendant so long as the claims originated from Cruz's employment with Launch.  *See id.* at 3 (quoting Cruz's agreement that "arbitration is the exclusive remedy for *all disputes* arising out of or related to [his] employment with Launch.") (emphasis added).  Launch maintains that, even though it is only a third-party defendant in this case, it is nonetheless an "aggrieved" party under Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) and thus enjoys the right to seek an order compelling Cruz to arbitrate his claims against AerSale.  *Id.* at 5-6.  Finally, Launch contends that the Court should also order Cruz to individually arbitrate his claims as opposed to doing so on a class or collective basis.  *Id.* at 7-8.

In opposition to the motion, Cruz leads off by asserting that the arbitration provision prevents him in three separate ways from effectively vindicating his statutory rights under the FLSA.  *Id.* at 2-7.  He asserts that the arbitration provision requires him (1) to pay half of the combined costs for the arbitrator, the court reporter, and any incidental costs of arbitration, (2)  to pay his own attorney's fees, even if he is successful, and (3) to waive any claim arising from his employment if he did not provide written notice to Launch and submit it to binding arbitration within one year.  *Id.*  Relying on sworn declarations, Cruz explains that the burdens imposed by the arbitration provision are so onerous as to make the arbitral forum inadequate for vindicating

---

[3] Launch's motion also seeks an order compelling AerSale to arbitrate its third-party claims against Launch.  As AerSale does not oppose that relief, the Court will grant it.  *See* ECF 36 at 1 ("AerSale respectfully requests that the Court compel Cruz's claims *and AerSale's claims* to arbitration and stay this case.") (emphasis added).

[4] Citations to briefs and exhibits use the page numbers at the bottom of the page rather than the CM/ECF page numbering scheme at the top of the page.

his rights under the FLSA.[5]

As to the effective vindication arguments, Launch replies that Cruz has made an insufficient evidentiary showing that paying half the costs of the arbitration would be prohibitive for him. *See* ECF 37 at 5-9. Launch next asserts that the arbitration provision does not bar Cruz from obtaining an attorney's fee and cost award under the FLSA if he is successful in pursuing his claims. *Id.* at 9-10. Launch also maintains that the one-year limitations period in the arbitration provision does not apply to Cruz's wage claims but only to claims relating to harassment, discrimination, or termination. *Id.* at 10. Finally, Launch argues that the Court should sever any term of the arbitration provision it deems unenforceable and, just for good measure, Launch agrees to waive any such provision that the Court deems unenforceable. *Id.* at 10-11.

**LEGAL STANDARD FOR INTERPRETATION OF ARBITRATION AGREEMENTS**

"[A]rbitration is a matter of contract," so courts will rigorously enforce arbitration agreements but will not require a party to arbitrate a dispute they did not agree to arbitrate. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 616, 626 (1985). The Tenth Circuit applies "ordinary state-law principles that govern the formation of contracts" to interpret the breadth of arbitration clauses. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). Courts generally

---

[5] To be sure, Cruz opposes Launch's motion for other reasons as well. He argues that the arbitration provision fails for lack of consideration. ECF 35 at 8-10. He asserts that he never agreed to arbitrate claims against AerSale but only against Launch. *Id.* at 12-14. He further maintains that Federal Rule of Civil Procedure 14(a)(2)(C) permits Launch to raise only those defenses available to the third-party plaintiff (here, AerSale) and that, under the facts of this case, AerSale could not have moved to compel Cruz to arbitrate his claims, for two reasons. First, AerSale was not a third-party beneficiary of Cruz's employment agreement with Launch. *Id.* at 15-17. And second, AerSale could not invoke the doctrine of concerted misconduct estoppel to require Cruz to arbitrate his claims because Cruz had not alleged that AerSale and Launch had engaged in such misconduct. *Id.* at 17-22. Because the Court is deciding the motion solely on the effective vindication doctrine, the Court expresses no view on Cruz's alternative arguments.

construe arbitration clauses broadly, but also construe ambiguities in the provision against the drafter. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) (broad construction); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (construing against drafter).

Similarly, under New Mexico law, "[a] contract is ambiguous if separate sections appear to conflict with one another or when the language is reasonably and fairly susceptible of more than one meaning." *Heye v. Am. Golf Corp., Inc.*, 80 P.3d 495, 499 (N.M. Ct. App. 2003) (citing *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 976 P2d 1 (N.M. 1998)). When ambiguous, the court is to "construe ambiguities ... against the drafter to protect the rights of the party who did not draft it." *Id.* (citing *W. Farm Bureau Ins. Co. v. Carter*, 979 P.2d 231 (N.M. 1999)).

When interpreting arbitration clauses, the Tenth Circuit and New Mexico courts[6] first ask whether the arbitration clause is broad, affecting all potential disputes between the parties, or narrow, specifying the types of disputes to arbitrate. *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014); *K.L. House Constr. Co. v. City of Albuquerque*, 1978-NMSC-025, ¶ 8, 91 N.M. 492, 576 P.2d 752, 754. If the clause is broad, courts apply a strong presumption of arbitrability and are reluctant to deny arbitration. *Sanchez*, 762 F.3d at 1146; *K.L. House Constr. Co.*, 576 P.2d at 754.

## DISCUSSION

For the purposes of deciding the motion before it, the Court will assume without deciding the following: (1) the arbitration provision in Cruz's employment agreement "evidenc[es] a transaction involving commerce" and thus comes within the purview of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*; (2) the arbitration provision is broad enough to encompass Cruz's claims against non-signatory AerSale; and (3) despite its status only as a third-party defendant, Launch is

---

[6] Launch does not dispute that New Mexico law controls this issue. *See* ECF 37 at 4-5.

nonetheless an "aggrieved party" under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, so as to have standing to seek an order compelling arbitration of Cruz's claims.

### 1. Effective Vindication of Cruz's Statutory Rights[7]

"[A]n arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377 (10th Cir. 2016) (quoting *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999)). The presumption of arbitrability long enjoyed by agreements subject to the Federal Arbitration Act "falters 'if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights.'" *Id.* (quoting *Shankle*, 163 F.3d at 1234).[8] "The key question is whether the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1098 (10th Cir. 2023) (internal quotation and citation omitted). The effective vindication exception "'would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights,' and 'would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable.'" *Nesbitt*, 811 F.3d at 377 (quoting *Italian Colors Rest.*, 570 U.S. at 236). The Tenth Circuit recently emphasized that "a provision in an arbitration agreement forbidding the assertion of certain statutory rights would run afoul of, and be invalidated by, the effective vindication exception." *Harrison*, 59 F.4th at 1098 (internal quotation and citation omitted). The

---

[7] Because the Court is of the view that the arbitration provision in Cruz's Employment Agreement deprived him of the ability to effectively vindicate his statutory rights under the FLSA, the Court expresses no view as to whether the effective vindication doctrine has any application to Cruz's rights under the NMMWA.

[8] The Court pauses to observe that, though *Nesbitt* and *Shankle* were prominently featured in Plaintiff's response brief and are among the leading cases in the Tenth Circuit on the effective vindication doctrine, Launch did not mention either one in its reply brief. The Court considers the omission both conspicuous and curious given the centrality of the two decisions to the current debate between the parties.

party seeking "to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Nesbitt,* 811 F.3d at 378 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)).

As set forth *supra* at 5, Cruz identifies three reasons why Launch's arbitration provision prevents him from effectively vindicating his rights under the FLSA. First, the provision requires him to pay half the arbitration costs – an amount he contends he cannot afford – thereby depriving him of the essentially free-of-charge judicial forum that otherwise would have been available for his statutory claims. Second, the provision deprives him of an award of attorney's fees if he is successful, in contrast to the FLSA provision that *requires* a trial court – in the circumstance of a prevailing plaintiff – to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). And third, the provision obliges him to submit written notice to Launch of any dispute arising under or involving his employment with Launch – and to do so within one year from the date the dispute first arose. According to Cruz, this abbreviated limitations period deprives him of the more generous two-or-three-year limitations period under the FLSA. ECF 35 at 7-8 (*citing* 29 U.S.C. § 255(a), which prescribes a two-year period that can be extended to three years for willful violations).

For its part, Launch contends first that Cruz has failed to carry his evidentiary burden under *Green Tree* because he did not provide enough support for his estimates of the costs of arbitration or his inability to afford them. ECF 37 at 7-9. Launch next argues that the arbitration provision does not prevent Cruz from recovering attorney's fees under the FLSA should he prevail, but only requires him to pay his attorney's fees "at" and "during" the arbitration. *Id.* at 9-10. As to the limitations period, Launch insists that the term does not apply to the wage claims brought here but only to disputes arising out of termination, discrimination, or harassment. *Id.* at 10.

To decide whether the arbitration provision deprived Cruz of a forum in which he could effectively vindicate his FLSA rights, the Court will examine the text of each of these disputed terms in light of controlling Tenth Circuit law.

**Splitting Costs of Arbitration**

The arbitration provision makes two separate references to the allocation among the parties of the costs of arbitration.  In a standalone paragraph, the provision states:

> You and LAUNCH shall each bear respective costs for legal representation at any such arbitration. *The cost of the arbitrator and court reporter, if any, shall be shared equally by both parties, or as determined by the arbitrator.*

ECF 22-1, Ex. B (at unnumbered page 2) (emphasis added).  In the next (and concluding) paragraph, however, the provision revises the cost allocation issue as follows:

> I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with LAUNCH or the termination of that employment. I agree that I will be entitled to legal representation, at my own cost, during arbitration. *I further understand that I will be responsible for half of the cost of the arbitrator and any incidental costs of arbitration.*

*Id.* (emphasis added).

These two provisions, though in adjacent paragraphs, are meaningfully inconsistent.  The former identifies only the costs of the arbitrator and the court reporter as payable by the parties, whereas the latter ignores the cost of the court reporter and introduces the specter of some other expense called "any incidental costs of arbitration," whatever that implies.  Moreover, the former provision stipulates that the arbitrator could allocate arbitration costs other than by dividing them equally among the parties (theoretically imposing 100% of the costs on one side or the other).  But the latter provision says nothing of the sort and contemplates only a rigid 50% apportionment per side.  What is an employee in Cruz's position who is reading these excerpts supposed to think

about his/her responsibility for paying the costs of arbitration if a dispute arises?  Which costs?

What percentage of them?  Who decides?  How much are they?  Can they ever be reimbursed?

The Court perceives no tension in this case between the presumption of arbitrability under

the Federal Arbitration Act and the general rule that ambiguities in contracts are resolved against

the drafter.  After all, the Court is *presuming* that Cruz's dispute with AerSale *is* arbitrable.  The

question is whether the arbitral forum contemplated by the arbitration provision that Launch

drafted would be an effective alternative for Cruz to vindicate his FLSA rights.  And on *that* score,

the rule that contractual ambiguity is construed against the drafter applies with full force.

Consequently, applying that rule here, the Court interprets the confusing and inconsistent language

of the arbitration provision as it relates to arbitration costs to require that – no matter the outcome

of the arbitration – Cruz would be responsible for paying *at least half* the total cost (from whatever

source) and conceivably could be responsible for paying *all of it* if so determined by the arbitrator.

*See Nesbitt*, 811 F.3d at 380 (internal inconsistencies in arbitration agreement that yield ambiguity

held against drafter).

But construing this language in the light most favorable to Cruz would make no difference

unless he has made a sufficient evidentiary showing that being held responsible for such costs

would make pursuing arbitration of his claims prohibitive and impracticable.  On that point,

Launch contends that the factual showing made by Cruz fell short of carrying his burden of

demonstrating that he lacks the resources to pay his share of the arbitration costs. ECF 37 at 6-9.

Launch complains that Cruz's estimates of the potential costs of arbitration rest solely on his

counsel's word as opposed to citations to recognized arbitral association fee regimes, trade

journals, or appellate cases.  *Id.* at 6-7.  Launch also disputes Cruz's estimate of the amount of

hours an arbitrator would devote to this case, the billable rate the arbitrator would charge, and the

length and complexity of the actual hearing.  *Id.* at 6-8.  But apart from criticizing Cruz's evidence, Launch offered none of its own.  In other words, the only *evidence* before the Court was supplied by Cruz.

The Court finds that Cruz has made a sufficient factual showing under *Green Tree*.  To begin, his counsel averred that his firm specializes in representing employees in employment law matters, that he has spent most of his career litigating and arbitrating wage and hour cases, and that he has been counsel of record in well more than 100 arbitrations of wage and hour claims. ECF 35-1, Ex. 1 ¶¶ 3-5.  On that foundation, he opined that the arbitration of Cruz's claims may take 50-80 hours of arbitrator time from beginning to end, that typical arbitrator rates in cases like this average $450/hour, and that arbitrations involving single claimants in wage and hour cases often exceed $30,000.  *Id.* ¶¶ 6-7.  Cruz's counsel assessed that an arbitration hearing in this case would take two days and would involve 16-20 hours of court reporter time at an average rate of $50/hour.  *Id.* ¶ 8.  The Court considers the declaration by Cruz's counsel to be reliable evidence and Launch has provided no material reason for the Court to think otherwise.  The declaration makes clear that the declarant has a sufficient foundation for his opinions.  The declarant's past and current experience arbitrating cases similar to this one is especially relevant.  His insight into the time invested and money spent arbitrating claims like this is helpful to the factfinder.

In addition to his counsel's declaration, Cruz also attached his own.  *See* ECF 35-2, Ex. 2. There, Cruz explained that he is the sole breadwinner in his household, itemized his current compensation and expenses, and admitted that he has less than $1,000 of discretionary income left over each month.  *Id.* ¶¶ 6-9.  Cruz attested that he is unable to afford the cost of arbitrating his claims in this case, particularly considering his share could exceed $20,000 and there is no allowance in the arbitration provision for him to be reimbursed for his share if he prevails.  *Id.* ¶

10. Again, the Court considers Cruz's declaration to be reliable evidence. Obviously, Cruz has personal knowledge of his financial condition and the inflows and outflows of his money each month. His understanding of the potential cost of arbitration is not unreasonable, and he is particularly well-suited to opine as to whether he can afford to pay his share of it. While the declaration did not address whether Cruz has savings, investments, or other assets he could have tapped to pursue arbitration, the Court does not consider that omission to be fatal to his declaration.[9]

Considered in its totality, this evidence persuades the Court that Cruz has carried his burden of showing that he cannot afford to pay his share of the costs of arbitration. This showing is vastly superior to that proffered in *Green Tree*. There, the plaintiff provided only tenuous factual support for a "risk" of high arbitration costs and did so only via argument in a motion for reconsideration instead of a declaration. 531 U.S. at 84, 90 n.6, 91.[10] To the contrary, Cruz has provided reliable evidence in the form of sworn declarations sufficient to demonstrate his inability to afford arbitral costs. The Court resolves the debate between the parties about exactly how complicated the arbitration would be, how much time would be required, and how much the whole enterprise would cost by finding that – in 2023 – an arbitration likely would cost somewhere

---

[9] Cruz also attached a declaration from John Roldan, who joined this case in November 2022. ECF 4. Roldan's declaration [ECF 35-3, Ex. 3] is essentially identical to Cruz's in all material respects and the Court considers it similarly persuasive.

[10] Launch also points to *Italian Colors* and a 2013 Western District of Tennessee case to question whether the effective vindication argument can even apply to claims regarding high arbitration fees. ECF 37 at 6 (citing 570 U.S. 228 and *Byrd v. SunTrust Bank*, No. 2:12-cv-02314-JPM-cgc, 2013 WL3816714 (W.D. Tenn. July 22, 2013). However, because both of these cases and *Green Tree* were decided before *Nesbitt*, none of them undercut the effective vindication doctrine the Tenth Circuit instructs district courts to follow. *Italian Colors* was also concerned with class actions in arbitration and not the specific issues implicated here.

Finally, the one recent district court case in the Tenth Circuit that Launch cites is also distinguishable because the plaintiff there failed "to present any evidence of an actual inability to pay" which prevented "him from effectively invoking the [ineffective vindication] exception. ECF 37 at 12 (citing *Whitlow v. Crescent Consulting, LLC.*, No. CIV-16-1330-R, 2018 WL 1915083, at *2 (W.D. Okla. Apr. 23, 2018)).

between $10,000-$25,000.[11]   Thus, compelling arbitration would deny Cruz access to the otherwise no-cost judicial forum and instead make him front steep arbitration costs that he currently cannot afford on the mere hope that someday the arbitrator might make his legal adversary reimburse him for some portion of them.   *Nesbitt* and *Shankle* instruct that such a scenario disqualifies arbitration as an effective alternative forum for Cruz to vindicate his FLSA rights.

A final point on the cost-sharing term of the arbitration provision:  Launch asserts that even if Cruz can't pay his share of the arbitration costs himself, then his counsel can front those costs for him.  ECF 37 at 8-9.  This argument is certainly convenient and may even have the benefit of being true.  But the argument is quite beside the point because it does not address the virtual certainty that Cruz's counsel would never have agreed to take on the case had it been postured from the beginning as an individual arbitration action.  The Court suspects that very few employee-side counsel in the wage-and-hour space have individual arbitrations of relatively small-dollar claims as their business model.  Fronting several thousand dollars of non-reimbursable arbitration costs in pursuit of low-dollar claims is an approach to generating revenue the Court believes the American plaintiff's bar would find decidedly unattractive.

**Paying Attorney's Fees**

The arbitration provision makes two separate references to the parties' respective responsibilities for paying their own attorney's fees.  The next-to-last paragraph provides:

> *You and LAUNCH shall each bear respective costs for legal representation at any such arbitration.* The cost of the arbitrator and court reporter, if any, shall be shared equally by both parties, or as determined by the arbitrator.

---

[11] The Tenth Circuit itself estimated that "[t]he typical employment case averages between fifteen to forty hours of arbitrator time."  *Shankle*, 163 F.3d at 1234 n.5 (citing *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465, 1480 n.8 (D.C. Cir. 1997)).  In *Shankle*, the Tenth Circuit noted that the plaintiff could not afford arbitration costs of between $1,875 and $5,000 "and it is unlikely other similarly situated employees could either."  *Id.* at 1234-35.  Cruz faces far greater costs a quarter-century later.

ECF 22-1, Ex. B (at unnumbered page 2) (emphasis added).  The concluding paragraph states:

> I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with LAUNCH or the termination of that employment. *I agree that I will be entitled to legal representation, at my own cost, during arbitration.* I further understand that I will be responsible for half of the cost of the arbitrator and any incidental costs of arbitration.

*Id.* (emphasis added).  The agreement is silent as to whether the employee's attorney's fees could ever be shifted to the employer under any circumstances or (unlike with splitting the arbitration costs) whether the arbitrator has any discretion to do so.

Cruz takes the position that "[t]he arbitration provision requires [him to] bear his own attorney fees, even if successful[.]"  ECF 35 at 3.  He asserts that "[t]his is directly contrary to the FLSA's fee-shifting provision which *mandates* an award of attorney's fees to a prevailing plaintiff."  *Id.* at 8 (citing 29 U.S.C. § 216(b)) (emphasis in original).

But Launch disagrees.  Zeroing in on the plain text of the provision, Launch emphasizes that the attorney's fee terms dictate only that Cruz is responsible for his attorney's fees "at" and "during" the arbitration.  ECF 37 at 10.  Launch maintains that the provision simply does not address the issue of what happens to attorney's fees *after* the arbitrator has made a decision and the arbitration is complete.  Consequently, says Launch, the provision does not affect in any way Cruz's ability to seek an award of attorney's fees under any statute including the FLSA if he prevails on his claims.  *Id.*

The Court considers this a closer question than the issue of splitting the arbitration costs.  Launch's strict construction of the text has facial appeal, but the arbitration provision's utter silence on the availability of an attorney's fee award for a successful claimant is disquieting.  By *twice* reminding Cruz of his obligation to pay attorney's fees without ever adverting to the possibility that a successful claimant could be reimbursed for them, the arbitration provision

misleads by omission. This becomes doubly true when one considers that many employment statutes, chief among them the FLSA, do not merely authorize but *require* the award of reasonable attorney's fees to a prevailing plaintiff. *See* 29 U.S.C. § 216(b). The attorney's fee provision here at the very least risked leaving Cruz with the mistaken impression that the responsibility for paying his attorney's fees would remain on him – no matter the outcome of his claims. And that impression would doubtless deter Cruz and similarly situated employees from making claims against Launch because the attorney's fee often would exceed the value of their individual claims. *See* ECF 35-2, Ex. 2 ¶ 12 (Cruz avowing that the "estimated attorneys' fees and costs in this case are likely to exceed my potential individual recovery by many, many times.").

The Court believes that the Tenth Circuit's decision in *Nesbitt* compels the conclusion that the meaningfully incomplete and potentially misleading attorney's fee provision runs afoul of the effective vindication exception. In *Nesbitt*, the arbitration agreement advised the reader of more than Launch's agreement explained to Cruz. The agreement stated that "[a]rbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association *applying federal law to the fullest extent possible*." *Nesbitt*, 811 F.3d at 380 (quoting the agreement) (emphasis added). The parties in *Nesbitt* agreed that the FLSA would be the federal law to apply and carried with it the mandatory award of attorney's fees to a successful plaintiff. *Id.* In addition, the Commercial Rules of the American Arbitration Association separately authorized the arbitrator to include "an award of attorneys' fees if all parties have requested such an award or *it is authorized by law* or their arbitration agreement." *Id.* (emphasis added). Yet even despite this more expansive and helpful advisement on the subject of attorney's fees, the Tenth Circuit *still* considered the agreement to be "internally inconsistent and thus ambiguous regarding the availability of a fee award for Nesbitt." *Id.* Analogizing the burden of paying attorney's fees

to the burden of paying arbitration costs, the Tenth Circuit concluded that "it is unlikely that an employee in [the plaintiff's] position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum." *Id.* at 380-81 (quoting *Shankle*, 163 F.3d at 1234 n.4) (brackets in original).  The same being true here, the same result must obtain.[12]

### One-Year Limitations Period

The arbitration provision makes two separate references to the deadline for Cruz to make any employment-related claim against Launch.  One paragraph provides:

> If you choose to *dispute your termination or any other alleged incident during your employment, including but not limited to unlawful discrimination or harassment*, you must deliver a written request for arbitration to LAUNCH *within one (1) year from the date of termination, or one (1) year from the date on which the alleged incident(s) or conduct occurred,* and respond within fourteen (14) calendar days to each communication regarding the selection of an arbitrator and the scheduling of a hearing. If LAUNCH does not receive a written request for arbitration from you within one (1) year, or if you do not respond to any communication from LAUNCH about the arbitration proceedings within fourteen (14) calendar days, you will have waived any right to raise any claims arising out of the termination of your employment with LAUNCH, or involving claims of unlawful discrimination or harassment, in arbitration and in any court or other forum.

ECF 22-1, Ex. B (at unnumbered page 2) (emphasis added).  The concluding paragraph states:

> I further agree that, in accordance with LAUNCH's Arbitration Policy, that I will submit *any dispute — including but not limited to* my termination — arising under or involving my employment with LAUNCH to binding arbitration *within one (1) year from the date the dispute first arose.*

*Id.* (emphasis added).

---

[12] In briefing and at oral argument, Launch emphasized the Court's obligation to indulge the well-established presumption of arbitrability and to construe all ambiguities in Cruz's arbitration agreement in favor of arbitrability. That argument is good only as far as it goes. After all, the very same presumption of arbitrability was at work when the Tenth Circuit decided *Nesbitt* and *Shankle*. But in each case, the Court of Appeals concluded that the agreement in question prevented the effective vindication of the plaintiff's statutory rights, notwithstanding the presumption.

Pointing out that the one-year period is in direct conflict with the two or three-year period authorized under the FLSA, Cruz argues that "[t]he plain language of the arbitration provision thus waives Cruz's right to pursue employment claims if he does not request arbitration from Launch within" the one-year time frame.  *Id.* at 7-8.  Cruz contends that this provision is unenforceable because it prevents him from effectively vindicating his FLSA rights.  *Id.* at 8.  To support his argument, Cruz cites to a Sixth Circuit case holding that provisions in employee agreements that limit FLSA limitations periods are invalid. ECF 35 at 8 (citing *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606–07 (6th Cir. 2013) (holding a six-month limitation provision in an employee contract was invalid because it waived the plaintiff's three-year statute of limitation right under the FLSA and FLSA rights cannot be waived by contract)).

Launch makes a single argument in opposition, insisting that the one-year provision does not apply to Cruz's wage claims but only to claims associated with termination, discrimination, or harassment, none of which are at issue in this lawsuit.  ECF 37 at 10.

Here too, the Court finds the relevant language of the arbitration provision to be inconsistent and confusing.  The first reference speaks only to disputes relating to an employee's "termination or any other alleged incident during . . . employment."  But the later reference has a much broader and seemingly unlimited scope: "*any dispute – including but not limited* to my termination – arising under or involving my employment with [Launch]."  So which of the two scopes controls – the narrower or the broader?  Launch's reply brief focused only on the earlier reference and – perhaps with good reason – ignored the latter one.  Furthermore, what should the reasonable reader make of the first reference's use of the phrase "any other *alleged incident*?"  If the natural meaning of incident is "a definite and separate occurrence" or "event,"[13] that definition

---

[13] "Incident *n.* 1. A definite and separate occurrence; an event." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000).

certainly seems elastic enough to describe the periodic issuance of a paycheck that fails to compensate its recipient in accordance with federal and state overtime laws.  How is the ordinary and reasonable aircraft mechanic supposed to parse this language?

Because New Mexico law (*supra* at 7) and *Nesbitt* teach district courts to hold against the employer any inconsistent language it used in an agreement it drafted, the Court will reconcile the combined language in the two references to require *any* claimant to comply with the one-year provision for *any* employment claim of *any* kind that s/he seeks to bring and failure to do so results in waiver of those claims.  This interpretation easily leads the Court to conclude that Launch's arbitration provision required Cruz to forego availing himself of the more expansive and remunerative limitations period in the FLSA.  Indeed, application of the one-year period here would limit Cruz only to a year's worth of allegedly unpaid overtime, as opposed to recovering for similar violations dating back to the onset of his employment in 2020, which arguably the FLSA permits him to do.  For all these reasons, and as the Sixth Circuit did in *Boaz*, this Court holds that the effective vindication exception invalidates the abbreviated limitations period in the arbitration provision.

**Severability**

In a single paragraph in its reply, Launch argues that if the Court concludes that the arbitration provision denies Cruz a forum in which to effectively vindicate his statutory rights, the Court should sever the offending clause(s) instead of invalidating the arbitration provision altogether. ECF 37 at 10-11. Launch cites three federal cases from this district that it suggests should illuminate this Court's path.  The Court has carefully examined each of these cases but concludes that each of them featured such different claims, facts, or legal theories as to be readily distinguishable from this case.

*Patterson v. Nine Energy Service, LLC*, 355 F. Supp. 3d 1065 (D.N.M. 2018), involved a putative Rule 23 class action brought solely under the NMMWA.  In opposing a motion to compel arbitration, the plaintiff class did not invoke the effective vindication exception but challenged the arbitration provision on other grounds as unconscionable.  *Id.* at 1077. Applying New Mexico law, the district court granted the motion and compelled arbitration, but only after severing from the agreement a term concerning an injunctive relief provision entirely unrelated to the basis of the claims in the case.  *Id.* at 1114-18.

The next case, *Jerry Erwin Associates, Inc. v. Estate of Asher by and through Zangara*, 290 F. Supp. 3d 1213 (D.N.M. 2017), involved a dispute between a nursing home and the conservator of one of its residents.  The nursing home moved to compel arbitration. *Id*. at 1224–25.  Again applying New Mexico law, the district court granted the motion, but only after severing an eviction provision it found unconscionable but which was unrelated to the claims at issue.  *Id.* at 1257.  This case had nothing to do with the effective vindication exception that applies to arbitration of federal statutory claims.  Moreover, the district court in *Jerry Irwin Associates* emphasized that New Mexico law grants courts *the choice* of whether (1) to refuse to enforce a contract altogether that contained unconscionable term(s), or (2) enforce the remainder of the contract after excising the unconscionable term(s).  *Id.* at 1256.

The third and final case cited by Launch, *Gorman v. S/W Tax Loans, Inc.*, No. 1:14-CV-00089-GBW-KK, 2015 WL 12751710 (D.N.M. Mar. 17, 2015), comes closest to the facts and posture of this case.  There, a putative class sued under the federal Truth in Lending Act, the federal Rebate Act, and the New Mexico Unfair Practices Act. *Id.* at *1.  The defendant moved to dismiss the class claims and to compel plaintiff to individually arbitrate her own claims.  *Id.*  The district court held (1) that a provision requiring the claimant to share responsibility for a portion of the

costs of arbitration *did not* violate the effective vindication doctrine but was nonetheless unenforceable because of ambiguity, and (2) provisions related to a limitation on damages and attorney's fees did violate the doctrine. *Id.* at *5-6. The district court concluded, however, that the offending provisions could be severed from the agreement because they dealt only with available remedies and were not "central to the arbitration scheme." *Id.* at *7.[14] *Gorman* did not feature a provision, like here, that forbade the bringing of claims more than one year after they ripened, irrespective of an otherwise operative statute of limitations. In other words, the offending provisions in *Gorman* related only to available remedies but did not narrow the kinds of claims that could be brought at all in arbitration.

As the Court understands Launch's position, the Court would overlook the absence of a savings clause from Cruz's Employment Agreement and reframe the arbitration provision as follows:

> **DISPUTE RESOLUTION**
> If an employment dispute arises while you are employed at LAUNCH, you agree to submit any such dispute arising out of your employment . . . exclusively to binding arbitration . . . .
>
> ~~If you choose to dispute your termination or any other alleged incident during your employment, including but not limited to unlawful discrimination or harassment, you must deliver a written request for arbitration to LAUNCH within one (1) year from the date of termination, or one (1) year from the date on which the alleged incident(s) or conduct occurred, and respond within fourteen (14) calendar days to each communication regarding the selection of an arbitrator and the scheduling of a hearing. If LAUNCH does not receive a written request for arbitration from you within one (1) year, or if you do not respond to any communication from LAUNCH about the arbitration proceedings within fourteen (14) calendar days, you will have waived any right to raise any claims arising out of the termination of your employment with LAUNCH, or involving claims of unlawful discrimination or~~

---

[14] Unlike the Employment Agreement here, the agreements at issue in the *Gorman* case included a severability provision that read: "If any provision of this [Refund Anticipation Loan] Agreement is deemed invalid, such invalidity shall not affect any other provision or part of this RAL Agreement." *Gorman*, No. 1:14-CV-00089-GBW-KK, ECF 8, Ex. 1 (agreements attached as exhibits to motion to compel arbitration).

~~harassment, in arbitration and in any court or other forum.~~[15]

Unless agreed otherwise, any arbitration hearings will take place in the last county (or parish) last worked by employee.

~~You and LAUNCH shall each bear respective costs for legal representation at any such arbitration. The cost of the arbitrator and court reporter, if any, shall be shared equally by both parties, or as determined by the arbitrator.~~

My signature on this document acknowledges that I understand the terms and conditions of this Agreement. . . . I further agree that, in accordance with LAUNCH's Arbitration Policy, that I will submit any dispute . . . involving my employment with LAUNCH to binding arbitration ~~within one (1) year from the date the dispute first arose~~. I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with LAUNCH . . . . I agree that I will be entitled to legal representation~~, at my own cost~~, during arbitration. ~~I further understand that I will be responsible for half of the cost of the arbitrator and any incidental costs of arbitration.~~

ECF 22-1 at 16-17.

The Court considers Launch's severance request to be in tension with Tenth Circuit precedent and not supported by New Mexico's severability doctrine. The Tenth Circuit has explicitly refused to "redline the fee-splitting provision" in an employment agreement that violated the effective vindication doctrine and instead concluded the entire arbitration provision was invalid. *Shankle*, 163 F.3d at 1235 n.6.[16] And there is precious little daylight between the paragraphs and clauses Launch asks this Court to sever and the unambiguous terms the Tenth Circuit refused to redline in *Shankle*. *See id.*

---

[15] The Court recognizes there are many ways to redline this paragraph so that it does not prevent the effective vindication of Cruz's right to the FLSA's two-year statute of limitations. But that there are multiple ways to do so only supports the conclusion that the Court should invalidate the arbitration agreement instead of attempting to surgically change its current terms. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 819 ("court's duty is confined to interpretation of the contract which the parties made for themselves.") (internal quotation marks omitted).

[16] While Launch argues *Shankle* has been overturned or undercut by *Green Tree* and *Italian Colors*, the Tenth Circuit sees it differently. *See Nesbitt*, 811 F.3d at 377–80 (citing *Shankle* positively four times and interpreting it as consistent with *Green Tree* and *Italian Colors*). With this guidance, the Court is left with the unmistakable impression that *Shankle* is alive and well and still controlling.

Additionally in *Nesbitt*, the Tenth Circuit affirmed the invalidating of an arbitration provision after the district court held the violating terms could not be severed from the arbitration provision. *Nesbitt*, 811 F.3d at 381 (affirming 74 F. Supp. 3d 1366, 1375 (D. Colo. 2014)). The district court refused to sever the cost sharing or attorney's fee provisions of the arbitration agreement in *Nesbitt* because the offending provisions were unambiguous, and the contract did not include a savings clause. 74 F. Supp. 3d at 1375. The Tenth Circuit affirmed and denied arbitration instead of reforming the agreement. 811 F.3d at 381. The Tenth Circuit emphasized that effective vindication is a doctrine allowing courts to "invalidate"—not reform—arbitration agreements that prospectively waive statutory rights. *Id.* at 377.[17] The Court concludes that Tenth Circuit precedent compels it to invalidate the arbitration provision in its entirety as opposed to striking through and reforming it.

What is more, application of New Mexico's severability doctrine also does not require the Court to grant the relief that Launch seeks. The Court begins by emphasizing that the only time the New Mexico Supreme Court severed the unenforceable provisions of an arbitration agreement instead of scrapping it altogether was to effectuate more complete relief for *the plaintiff*. *See Padilla v. State Farm Mut. Auto. Ins. Co.*, 68 P.3d 901, 908 (N.M. 2003) (severing the violating provisions because striking the whole arbitration provision was "inadequate to remedy the [arbitration provision's] violation of the policies underlying the uninsured motorist statute."). In *Padilla,* the plaintiff sued for declaratory judgment to nullify specific unenforceable language in the arbitration provision. The Supreme Court granted that specific remedy by severing the

---

[17] Finally, other circuits have recognized ours as one that "strike[s] arbitration clauses in their entirety, rather than simply sever[ing] offending provisions." *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 84 (D.C. Cir. 2005) (citing *Shankle*, 163 F.3d 1235 & n.6).

language from the arbitration provision, concluding that this remedy gave the plaintiff the most complete relief. *Id.*

But two other cases, in both of which the New Mexico Supreme Court *denied* requests to salvage arbitration agreements after severing their unconscionable terms, shared the same procedural posture with the instant case: plaintiffs seeking to bring their claims in court and their legal adversaries moving to compel arbitration. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803 (N.M. 2011); *Cordova v. World Fin. Corp.*, 208 P.3d 901 (N.M. 2009). In each case, the New Mexico Supreme Court recognized that a court has two choices when deciding the appropriate remedy to address an arbitration agreement with unconscionable terms: strike the arbitration provision in its entirety or reform the agreement to cure the infirmities. And in each case, the state supreme court concluded that the appropriate remedy was to strike the provision in its entirety rather than surgically reconstructing it. *Rivera*, 259 P.3d at 819; *Cordova*, 208 P.3d at 911.

The New Mexico Supreme Court's approach in *Rivera* and *Cordova* squarely aligns with the Tenth Circuit's refusal to "redline" unambiguous terms *within* the arbitration provision in *Shankle*. Here, the Court would have to judicially operate on Launch and Cruz's agreement by striking through many of the unambiguous clauses in the original arbitration provision and central to how the parties envisioned the arbitration process would be conducted. *Cordova*, *Rivera,* and *Shankle* uniformly rebuke this exercise. This level of judicial surgery is especially "difficult to justify absent a savings clause" in Launch's agreement. *See Felts v. CLK Mgmt., Inc.*, 254 P.3d 124, 140 (N.M. Ct. App. 2011); *see also Figueroa v. THI of N.M.*, 306 P.3d 480, 494 (N.M. Ct. App. 2012) (denying severance despite the presence of a savings clause because severance "would perpetuate the unfairness" of the unlawful arbitration provision).[18]

---

[18] Severance is an equitable remedy anchored around fairness, and at least one federal court has recognized that applying this remedy to effective vindication cases would inequitably "incenti[vize defendants] to include unlawful

Of the two remedies available to it – either finding the arbitration provision altogether unenforceable or excising the three offending provisions and salvaging the remainder – this Court is decidedly of the view that the former remedy is the most equitable for the circumstances of this case.  Were the Court to grant Launch's request to sever-and-salvage, the Court in effect would be allowing a sophisticated employer to enjoy for years the benefits of a provision it drafted that reasonably can be interpreted to impose substantial arbitration costs on the claimant, under-inform or potentially mislead the claimant about the recoverability of attorney's fees, and cut by at least half the ordinary time a claimant would have to file a wage claim.  By themselves, each of these terms can be a daunting obstacle to the ordinary claimant but together they may have deterred untold numbers of potential claimants from ever pursuing their claims.  To permit Launch now to obtain the forum it wants by judicially reconstructing an arbitration provision the original text of which may have intimidated many previous claimants from ever filing a claim does not square with this Court's sense of equity.  Accordingly, the Court will exercise its discretion to deny severance and instead declare the arbitration provision unenforceable in its entirety.

### 2.  Waiver

As its ultimate fallback position, Launch agrees to waive the arbitration fee splitting, attorney's fee, and time limitation provisions if the Court concludes any of them are unenforceable.  ECF 37 at 16.  Launch contends that this waiver—contingent on the Court finding these provisions unenforceable—should moot any effective vindication challenge to the arbitration provision.  *Id.*  In support of this contingent waiver argument, Launch provides a string cite of cases interpreting

---

provisions in [their] arbitration agreements [because s]uch [unlawful] provisions could deter an unknowledgeable employee from initiating arbitration . . . . [and] add an expensive procedural step . . . [where the undeterred employees] would have to [first file a claim] request[ing] a court [sever the] unlawful [provisions] before initiating arbitration." *Perez v. Globe Airport Sec. Servs.*, 253 F.3d 1280, 1287 (11th Cir. 2001), *vacated due to stipulated dismissal*, 294 F.3d 1275 (2002).

other jurisdictions' contract law. *Id.* (citing *Bekele v. Lyft, Inc.*, 918 F.3d 181, 189 (1st Cir. 2019) (finding the plaintiff's argument about arbitration costs would "conflict with the [Massachusetts Supreme Court's] case-by-case approach" after Lyft offered to pay for arbitration); *Plummer v. McSweeney*, 941 F.3d 341, 346 (8th Cir. 2019) (holding that offer to pay "cure[d] substantive unconscionability . . . [under] D.C. law"); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124 (2d Cir. 2010) (reasoning "New York law would allow for the enforcement of the arbitration agreement as modified by the defendants' waivers").

Notwithstanding what may be the waiver doctrines in Massachusetts, the District of Columbia, and New York, this Court in its discretion will not permit Launch to waive the contested provisions here.[19] The Court's reasons closely track its reasons for refusing to sever the offending provisions while salvaging the remainder of the arbitration provision.[20]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Launch's Motion to Compel Arbitration [ECF 22] is **DENIED** in all respects except to the extent it seeks an order (a) compelling Third-Party Plaintiff AerSale to arbitrate its claims against Launch and (b) staying those claims during the pendency of the arbitration. **IT IS THEREFORE ORDERED** that Third-Party Plaintiff AerSale's claims against Launch **SHALL BE ARBITRATED** and are **STAYED** pending the

---

[19] The Court was unable to find any New Mexico case addressing whether a party could save the remainder of an arbitration agreement by prospectively waiving any provision the court later concludes is unlawful. The Court believes, however, that the same rationale that drove the New Mexico Supreme Court's refusal to sever in *Rivera* and *Cordoba* (and the Tenth Circuit's refusal to require red-lining the agreement in *Shankle*) would apply with full force in the waiver context.

[20] In addition, the Court notes that multiple federal courts have rejected waiver arguments even when the waiver is not contingent on the court later finding parts of the arbitration agreement unlawful. *See, e.g.*, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 676–77 (6th Cir. 2003) (en banc) (rejecting a defendant's written waiver of the fee-splitting provision in an arbitration agreement because the agreement as written would dissuade employees from filing for arbitration, thus "the employer is saddled with the consequences of the provision *as drafted*"); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 217–18 n.2 (3rd Cir. 2003) (rejecting that the defendant's "after-the-fact" offer to pay for arbitration cured the ineffective vindication concerns).

arbitration.  **IT IS FINALLY ORDERED** that Launch's Motion for Leave to File Supplemental Brief [ECF 46] is **DENIED AS MOOT** because the subject matter of the supplemental brief is unrelated to the basis of this Opinion.

> **SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***