UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

WILL CRUZ,

      Plaintiff,

v.                                              Civ. No. 2:22-857 GJF/KRS

AERSALE, INC.,

      Defendant/Third-Party Plaintiff,

v.

AVIATION PERSONNEL, LLC, *et al.*,

      Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Strike or Sever Third-Party Complaint. ECF 69. In the Motion, Plaintiff Will Cruz ("Cruz") asks the Court to strike Defendant/Third-Party Plaintiff AerSale, Inc.'s ("AerSale") most recent Third-Party Complaint [ECF 66], which seeks indemnification and contribution from Aviation Personnel, LLC ("Aviation"); G-Force Aircraft Maintenance, Inc. ("G-Force"); Hire Aviation Staffing Solutions, LLC ("Hire"); PSD Professional Services Development ("PSD"); and Strom Aviation, Inc. ("Strom") (collectively, "Third-Party Defendants" or "Staffing Companies").[1] Alternatively, Cruz seeks to sever AerSale's claims against the Staffing Companies from his claims against AerSale. ECF 69. For the following reasons, the Court GRANTS the Motion to the extent it seeks to sever AerSale's claims against Aviation, G-Force, Hire, and PSD into a separate case number.[2]

---

[1] AerSale also named Elwood Staffing Services, Inc., as a third-party defendant but later stipulated to its dismissal without prejudice. ECF 75.

[2] AerSale and Strom filed a Joint Motion to Stay Pending Completion of Arbitration. ECF 103. Now having Strom's consent under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73 [*see* ECF 110], the Court will grant the

**RELEVANT PROCEDURAL BACKGROUND**

Cruz filed his initial Complaint against AerSale on November 10, 2022, alleging violations of the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). ECF 1. Very early on, AerSale filed a Third-Party Complaint against one of its staffing partners, Launch Technical Workforce Solutions, LLC ("Launch"). ECF 16. Without objection, this Court ordered AerSale and Launch to arbitrate their dispute pursuant to their contract. ECF 49 at 26-27. Cruz filed an Amended Complaint on May 1, 2024, the principal effect of which was to remove the geographic limitation on the scope of his FLSA claim. ECF 61. Nearly sixteen months after suing Launch, AerSale filed the Third-Party Complaint at issue against the Staffing Companies on June 3, 2024. ECF 66. Cruz moved to strike or sever the third-party complaint [ECF 69], AerSale responded in opposition [ECF 78], and Cruz replied. ECF 86. The Court entertained extensive oral argument on the Motion on August 29, 2024. ECF 108.

**PARTIES' PRIMARY ARGUMENTS**

Condensed and consolidated, Cruz's arguments are: (1) AerSale's Third-Party Complaint was untimely under Rule 14; (2) timeliness aside, Rule 14 otherwise supports striking or severance; (3) AerSale seeks indemnification and contribution, neither of which are available under the FLSA or NMMWA; (4) AerSale cannot contract around its FLSA obligations; (5) employers are jointly and severally liable for FLSA violations; (6) the Staffing Companies are not necessary parties to the litigation; and (7) AerSale has failed to demonstrate a basis for supplemental jurisdiction over its claims against the Staffing Companies. ECF 69.

---

Joint Motion by separate order. Similar to its third-party claims against Launch, which were stayed and referred for binding arbitration, AerSale's third-party claims against Strom will remain in this case number.

For its part, AerSale contends that: (1) its Third-Party Complaint was timely under the operative Scheduling Order [*see* ECF 57]; (2) Rule 14 does not otherwise support striking or severance; (3) Cruz lacks standing to make arguments on behalf of the Staffing Companies regarding indemnification and contribution and, in any event, the FLSA and NMMWA permit both remedies; (4) the FLSA allows breach of contract claims against joint employers; (5) the Staffing Companies are necessary parties; and (6) this Court has supplemental jurisdiction over the claims against the Staffing Companies.[3]

**ANALYSIS**

While much of the parties' briefing and argument centered on Federal Rules of Civil Procedure 14 and 15 [*see* ECF 69, 78, 86], Rule 21 guides this Court's decision as to severance. In pertinent part, Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Rule 21 endows courts with broad discretion to sever a claim. *See Quintero v. Leprino Foods Co.*, 09-cv-855 LH/ACT, 2011 WL 13286402, at *1 (D.N.M. Jan. 20, 2011) (citing *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)). Courts can sever claims pursuant to Rule 21 if severance will promote judicial economy, prevent prejudice, or facilitate settlement. *See Gonzales v. N.M. Dep't of Health*, 22-cv-525 WJ/SCY, 2024 WL 865868, at *2 (D.N.M. Feb. 29, 2024); *United States v. Edelman*, 06-cv-1216 WJP/RLP (D.N.M. Jan. 28, 2010); s*ee also generally FDIC v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996).

---

[3] The Court's resolution of the Motion relieves it of the obligation to address the merits of Cruz's contentions that AerSale cannot seek indemnity or contribution under the FLSA or NMMWA [ECF 69 at 5–10] or that this Court lacks supplemental jurisdiction over the Staffing Companies [ECF 69 at 14–17]. This decision also obviates the need to resolve whether Cruz has standing to raise issues that appear at least at first blush to belong to the Staffing Companies. *See generally Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 398 (2024) (Thomas, J., concurring) ("a plaintiff cannot establish an Article III case or controversy by asserting another person's rights"). The Court will address these arguments only if they arise in the separate case between AerSale and the Staffing Companies.

As set forth below, three principal reasons justify the Court's decision to sever Cruz's claims against AerSale from AerSale's recent claims against Aviation, G-Force, Hire, and PSD. First, although the Court questions whether AerSale's most recent Third-Party Complaint was technically timely, AerSale's decision to wait sixteen months after filing its original third-party complaint weighs heavily in favor of severance because of the real risk that Cruz (and the putative class he represents) would suffer additional prejudicial delay. Second, severing AerSale's claims against the remaining Staffing Companies into a separate case number forecloses the possibility that the instant case could be thrown off its current course due to (a) AerSale's contractual obligations to the Staffing Companies, whether in the form of forum selection, choice of law, or binding arbitration clauses; (b) any of the Staffing Companies withholding consent under 28 U.S.C. § 636(c); or (c) any of the Staffing Companies invoking its right to a jury trial when the primary combatants have waived theirs. Third and finally, severing the remaining third-party claims into a separate case number – as opposed to striking them altogether – promotes the possibility of settlement by maintaining a federal forum for AerSale's claims against Aviation, G-Force, Hire, and PSD.

**I.    Severance is proper because AerSale waited 16 months to file its present Third-Party Complaint.**

Under Federal Rule 14, a defendant must file any third-party complaint within fourteen days of filing its answer, or after receiving leave of court. Fed. R. Civ. P. 14(a)(1). To efficiently adjudicate all claims, trial courts typically file procedural orders, such as Rule 16 Scheduling Orders, that impose controlling deadlines on subsequent litigation. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 1); Fed R. Civ. P. 16(e) advisory committee's notes to 1983 Amendment; *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (applying this rule to a pretrial order).

4

Thus, courts may permit pleadings that meet scheduling order deadlines, even if doing so runs counter to other procedural rules. *See Sys. W. Performance, LLC v. Farland*, 14-cv-276 DN/BCW, 2015 WL 757279, at *1 (D. Utah Feb. 23, 2015); *AK Steel Corp. v. PAC Operating Ltd. P'ship*, 15-cv-9260 CM/GEB, 2016 WL 6163832, at *5 (D. Kan. Oct. 24, 2016). But a good faith effort to comply with a scheduling order – without more – does not necessarily make a new pleading timely. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 872 (10th Cir. 2018) (stating that district courts have broad discretion to interpret their own orders); *Seale v. Peacock*, 32 F.4th 1011, 1030 (10th Cir. 2022); *Lucero v. Carlsbad Med. Ctr.*, 18-cv-148 WJ/LF, 2019 WL 722630, at *2 (D.N.M. Feb. 20, 2019).

*Lucero* provides a useful example. There, Chief Judge Johnson held that a defendant/third-party plaintiff, Carlsbad, could not implead third-party defendants on indemnification theories even though Carlsbad did so within Scheduling Order deadlines. *Lucero*, 2019 WL 722630, at *1. Indeed, Carlsbad moved to implead third-party defendants roughly six months before the deadline to file motions under the applicable scheduling order. *See Lucero*, 18-cv-148, ECF 31 (D.N.M. Aug. 21, 2018). Because the original state court complaint referenced the third-party defendants and suggested their indemnification liability, however, Chief Judge Johnson reasoned that Carlsbad knew or should have known from the date on which it was sued that it could have sought indemnity from the third-party defendants. *Lucero*, 2019 WL 722630, at *2. Yet Carlsbad waited eleven months to implead them. *See id.* The Court further reasoned that it did not have to allow the impleader because Carlsbad could seek indemnity from the putative third-party defendants in a separate action. *See id.* Accordingly, the court denied Carlsbad's motion. *Id.*

*AK Steel* provides a converse example. There, the district court allowed a third-party complaint when the defendant, PAC, impleaded third-party defendants on the deadline to move to

5

amend pleadings under the applicable Scheduling Order. *AK Steel Corp.*, 2016 WL 6163832, at *3, *7. The court acknowledged that it inadvertently may have misled the parties regarding the need to seek leave to implead. *Id.* at *5. The court further reasoned that the third-party defendants were adequately heard and that requiring PAC to seek leave would require redundant briefing. *See id.* at *6. Accordingly, the court denied the third-party defendants' Motion to Strike the Third-Party Complaints. *Id.* at *7.

Here, Rule 14 required AerSale to file any third-party complaints within fourteen days of filing its original answer or otherwise obtain leave of court to do so. *See* Fed. R. Civ. P. 14(a)(1). Instead, AerSale waited roughly seventeen months after filing its original answer [ECF 6] and sixteen months after its amended answer [ECF 13] to file its most recent Third-Party Complaint, and it did not seek or obtain leave of court before doing so. *See* ECF 66. Accordingly, Cruz contends that AerSale's Third-Party Complaint is untimely under Rule 14.

In its defense, AerSale points to the operative Scheduling Order, which established a deadline of June 3, 2024, for it "to amend pleadings *and join additional parties* pursuant to Federal Rule of Civil Procedure *15*." ECF 57 at 2 (emphasis added). Although the order invoked Rule 15 and was silent as to Rule 14, AerSale may have concluded that the deadline *also* applied to joining new parties under Rule 14. After all, Rule 15 does not speak to joining additional parties – that is the province of Rule 14. Instead, except as it extends to relation back under Rule 15(c)(1)(C), Rule 15 is concerned with amending the allegations in pleadings by or against *existing* parties.[4]

---

[4] In briefing and oral argument, AerSale relied heavily on *Oldham v. Nova Mud, Inc.*, 20-cv-1166 MIS/GBW, 2022 WL 1987745 (D.N.M. June 6, 2022). ECF 78 at 4-5; Hr'g 1:14:16 – 1:14:40. In *Oldham*, the court denied a motion to strike or sever a third-party complaint where the plaintiff alleged FLSA and NMMWA violations and a defendant sought to implead a staffing agency that the plaintiff had originally sued in the same case but had later dismissed. *Id.* Although the defendant in *Oldham* waited over ten months to file the third-party complaint, the court concluded that the plaintiff suffered no prejudicial delay because the third-party defendant in *Oldham* was one of the originally named defendants. Here, in sharp contrast, Cruz *only* sued AerSale, alleging that AerSale was his sole employer. It is AerSale that now has brought five new parties into the lawsuit. These crucial factual and procedural differences lead the Court to conclude that AerSale asks *Oldham* to bear more weight than it can.

Nonetheless, whatever inadvertent confusion the operative scheduling order may have caused does not excuse AerSale from waiting sixteen months after it sued its first staffing partner (Launch) before suing the rest of them.[5] After all, the similarities between its third-party complaint against Launch and its latest version against the Staffing Companies vastly outnumber the differences. *Compare* ECFs 16 and 66. But even if the Court *were* to excuse AerSale's failure to comply with Rule 14, Rule 21 still permits the Court to sever claims against new parties that arrived in this case so long after the primary litigation began. Ultimately, the Court need not decide whether AerSale complied with Rule 14's timeliness requirement in filing its latest third-party complaint. At the end of the day, the Court's primary focus is on whether AerSale's decision to wait as long as it did risks further delaying a case that is almost two years old and whether that risk can be alleviated by diverting the remainder of the third-party litigation into a separate case number. And the Court's secondary focus is whether granting severance still preserves a forum for AerSale (assuming the requirements of federal jurisdiction are satisfied) to pursue its claims against the remaining Staffing Companies.

## II. <u>Severance is proper because it promotes judicial economy and prevents delay.</u>

The presence of the remaining Staffing Companies threatens to burden judicial economy and delay this case for three reasons: (a) AerSale has contractual obligations to the Staffing

---

[5] At the hearing, the Court asked AerSale's counsel for a justification for the sixteen-month delay, particularly when AerSale had promptly sued Launch. Hr'g 32:20 – 32:56. Counsel explained that he was initially unaware of any relevant staffing agency other than Launch. Hr'g 32:56 – 34:36. The Court also inquired whether any change in Plaintiff's Amended Complaint [ECF 61] had made Aviation, G-Force, Hire, PSD, or Strom potential third-party defendants when they were not before. Hr'g 35:34 – 35:53. Counsel responded that Plaintiff's Amended Complaint [ECF 61] implicated Aviation, G-Force, Hire, PSD, and Strom by expanding the geographic scope beyond New Mexico. Hr'g 35:53 – 36:56. Counsel did not definitively know, however, whether any of the five remaining Staffing Companies supplied AerSale with employees in New Mexico. Hr'g 34:36 – 34:44. Had Aviation, G-Force, Hire, PSD, or Strom supplied AerSale with employees in New Mexico, Plaintiff's original Complaint [ECF 1] would have made them potential third-party defendants. Thus, the Court finds AerSale's explanations to be insufficient to excuse its sixteen-month delay.

Companies to apply certain law, litigate in certain forums, or mediate and arbitrate this dispute; (b) the remaining Staffing Companies are free to withhold consent to the undersigned Magistrate Judge presiding over their case; and (c) the Staffing Companies may assert their right to a jury trial.

Courts have broad discretion to sever claims pursuant to Rule 21 to promote judicial economy and prevent delay. *See Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1190 (10th Cir. 2023) (discussing trial court's discretion to consider judicial economy when deciding procedural issues); *Gonzales*, 2024 WL 865868, at *2; Moore's Federal Practice – Civil § 21.05 (2002) (reasoning that prejudicial delay burdens judicial economy and supports severance under Rule 21). Thus, this Court can consider whether the presence of the Staffing Companies will burden judicial economy or cause delay when deciding whether to sever the claims. The Court determines that the risk of prejudicial delay posed by the addition of the Staffing Companies warrants granting Cruz's Motion to Strike or Sever to the extent that it seeks severance.

AerSale's contractual obligations regarding dispute resolution pose a risk of delay. Parties to a valid contract have the right to shape their own dispute resolution process. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972); *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1094 (10th Cir. 2019). Contracts routinely bind courts to enforce dispute resolution clauses – including forum selection clauses, choice of law provisions, and mandatory arbitration or mediation clauses. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59–60 (2013) (forum selection clauses); *Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 217 (10th Cir. 1992) (stating that federal courts apply the choice of law rules of the state in which they sit); *Fiser v. Dell Comput. Corp.*, 2008-NMSC-046, ¶ 7, 144 N.M. 464, 467, 118 P.3d 1215, 1218 (stating that under New Mexico law courts enforce choice of law provisions unless

they "violate some fundamental principal of justice"); *Coinbase, Inc. v. Suski*, 144 S.Ct. 1186, 1192 (2024) (arbitration agreements).

AerSale and the remaining Staffing Companies agreed to a variety of forum selection clauses, choice of law provisions, and mandatory arbitration or mediation clauses. For example, AerSale and Aviation agreed to litigate any disputes in Tarrant County, Texas. ECF 66-1 at ¶ 16. AerSale and G-Force agreed to litigate any disputes in the Southern District of Florida, specifically in Miami. ECF 66-3 at ¶ 10.5. Additionally, AerSale and G-Force agreed to apply Florida law to any dispute. *Id.* AerSale, Hire, and PSD agreed to apply "Florida/Arizona" law. ECF 66-4 at ¶ 10.5, 66-5 at ¶ 10.5, 66-6 at ¶ 10.5.[6] Finally, AerSale's contracts with Hire and PSD require mediation and arbitration to resolve disputes. ECF 66-4 at 15, ECF 66-5 at 13; ECF 66-6 at 13. Should AerSale or a Staffing Company seek their enforcement, these provisions would bind this Court. *See Atl. Marine Constr. Co.*, 571 U.S. at 59–60; *Tucker*, 956 F.2d at 217; *Fiser*, 2008-NMSC-046, ¶ 7, 144 N.M. at 467; 188 P.2d at 1218; *Coinbase, Inc.*, 144 S.Ct. at 1192. Litigation over provisions regarding forum selection, choice of law, or dispute resolution would prejudice Cruz – who is not a party to any of AerSale's contracts with the Staffing Companies – by causing undue delay and burdening judicial economy.

Allowing claims against the Staffing Companies to remain at this late-stage risks throwing this case far off course. The primary combatants in this case include Cruz, the putative FLSA collective, the putative Rule 23 NMMWA class, and AerSale. This litigation is now more than 22 months old. Allowing AerSale to litigate against the Staffing Companies in this case number imperils the operative scheduling order, guarantees significant delay in the resolution of Cruz's

---

[6] At oral argument, AerSale indicated that the Court could not enforce the "Florida/Arizona" choice of law provision because it is too ambiguous. Hr'g 1:08:26 – 1:09:44. The ambiguity of this provision does not pose difficulties – it unambiguously directs a court to distinct bodies of law. Difficulties would arise, however, if Florida and Arizona law conflicted on a relevant point of law.

9

claims, and risks reassignment of this nearly-two-year-old case to a District Judge if any of the remaining Staffing Companies do not consent to the undersigned as the presiding judge pursuant to 28 U.S.C. § 636. Additionally, Cruz and AerSale have waived their right to a jury trial, thereby consenting to a bench trial to resolve their disputes. Conceivably, any of the remaining Staffing Companies could further complicate and delay this case by asserting its right to a jury trial.[7]

Finally, the newly added Staffing Companies have every right to fight back, whether via counterclaims, crossclaims, discovery, or motions practice, any combination of which will cause prejudicial delay. AerSale indicated that it would seek time and pay records from the Staffing Companies, and that the Staffing Companies would likely seek AerSale's timekeeping policies and employee W4 forms. Hr'g 49:26 – 50:27. This discovery, which does not impact Cruz's claims, will further delay the reasonably expeditious resolution of claims to which Cruz is entitled. Moreover, Rule 14(a)(2)(C) allows a third-party defendant to assert against a plaintiff any defense that the original defendant has to the plaintiff's claims. Thus, any Staffing Company could assert against Cruz any defense that AerSale has to Cruz's claims, which could force Cruz to defend against as many as four additional parties from which he does not seek relief.

Because AerSale's Third-Party Complaint will cause prejudicial delay and risks substantial satellite litigation, the Court concludes that severance of AerSale's claims against the remaining Staffing Companies is proper under Rule 21.

### III.     **Severance is proper because it will facilitate settlement negotiations.**

Courts can consider settlement promotion – insofar as doing so would promote judicial economy – when deciding whether to sever claims pursuant to Rule 21. *See Sally Beauty Co., Inc. v. Beautyco, Inc.*, 372 F.3d 1186, 1190 (10th Cir. 2004); *Gonzales*, 2024 WL 865868, at *2;

---

[7] The Court notes that G-Force waived its right to a jury trial in its contract with AerSale. ECF 66-3 at ¶ 10.5.

*Quintero*, 2011 WL 13286402, at *1–2. At the hearing, AerSale emphasized its preference to globally mediate its disputes with Cruz and the Staffing Companies. Hr'g 59:10 – 1:00:02. Indeed, AerSale brought its Third-Party Complaint in part to incentivize the Staffing Companies to negotiate. *See* Hr'g 1:13:03 – 1:14:02. Yet AerSale can still incentivize the Staffing Companies to negotiate via a separate indemnification action. Rule 21 severance consequently causes very little, if any, prejudice to AerSale.

Ultimately, the Court concludes that severance strikes a reasonable balance between Cruz's interest – a speedy resolution of his claim – and AerSale's interest – collecting what it alleges it is due for any FLSA or NMMWA violations. Accordingly, AerSale's claims against the remaining Staffing Companies will be severed from Cruz's claims against AerSale pursuant to Rule 21.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike or Sever Third-Party Complaint [ECF 69] is **GRANTED** to the extent that it seeks to sever AerSale's claims against Aviation Personnel, LLC, G-Force Aircraft Maintenance, Inc., Hire Aviation Staffing Solutions, LLC, and PSD Professional Services Development from Cruz's claims against AerSale.  The Motion is **DENIED** to the extent that it requests that AerSale's Third-Party Complaint [ECF 66] be stricken.

**IT IS FURTHER ORDERED** that the claims by Cruz against AerSale, AerSale against Launch Technical WorkForce Solutions, LLC, and AerSale against Strom Aviation, Inc. shall remain in 22cv857 GJF/KRS.

**IT IS FURTHER ORDERED** that, with respect to the claims by AerSale against Aviation Personnel, LLC, G-Force Aircraft Maintenance, Inc., Hire Aviation Staffing Solutions, LLC, and

PSD Professional Services Development, the Clerk's Office shall assign a new case number with the same presiding and referral judges.[8]

      **SO ORDERED.**

                                                _____
                                                THE HONORABLE GREGORY J. FOURATT
                                                UNITED STATES MAGISTRATE JUDGE
                                                *Presiding by Consent*

---

[8] All parties in the new case number will have the opportunity to consent or refuse consent to the undersigned serving as presiding judge under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73.