## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WILL CRUZ, *Individually and*
*on behalf of others similarly situated*,

       Plaintiff,

v.                                                                      No. 2:22-cv-857 GJF/KRS

AERSALE, INC.,

       Defendant/Third-Party Plaintiff,

v.

AVIATION PERSONNEL, LLC, et al.,

       Third-Party Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

       THIS MATTER is before the Court on Plaintiffs' Motion to Compel, (Doc. 64) (the "Motion"), filed May 16, 2024. Having considered the parties' filings and the relevant law, the Court FINDS that the Motion is well-taken and should be GRANTED IN PART and DENIED IN PART as moot as set forth below.

## I.    BACKGROUND

       On November 11, 2022, Plaintiff Will Cruz ("Cruz") filed his initial Complaint against Defendant AerSale, Inc. ("AerSale") alleging violations of the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA").[1] (Doc. 1). Specifically, Cruz alleges

---

[1] On February 16, 2023, AerSale filed a Third-Party Complaint against one of its staffing partners, Launch Technical Workforce Solutions, LLC ("Launch"). (Doc. 16). The Court ordered AerSale and Launch to arbitrate their dispute pursuant to their contract. (Doc. 49 at 26–27). On June 3, 2024, AerSale filed a Third-Party Complaint against additional staffing partners, including Aviation Personnel, LLC, Elwood Staffing Services, Inc., G-Force Aircraft Maintenance, Inc., Hire Aviation Staffing Solutions, LLC, PSD Professional Services Development, and Strom Aviation, Inc. ("Strom"). On September 30, 2024, the Court ordered Launch and Strom to remain as third-party defendants in this case, but similar to its prior Order, (Doc. 49), AerSale's claims against Strom were stayed and referred for binding arbitration. (Doc. 115). The Court severed AerSale's claims against Aviation Personnel, LLC, G-Force Aircraft Maintenance, Inc., Hire Aviation Staffing Solutions, LLC, and PSD Professional Services Development

"per diem" hourly payments were improperly excluded from certain hourly workers' "regular rates" for the purposes of calculating and paying overtime. (Docs. 1, 52, 61). Cruz filed an Amended Complaint on May 1, 2024, the principal effect of which was to remove the geographic limitation on the scope of his FLSA claim. (Doc. 61).

On February 14, 2024, Cruz, AerSale, and Launch (the "Parties") filed a Joint Status Report and Provisional Discovery Plan (the "JSR"). (Doc. 52). The JSR identified Cruz and one other opt-in plaintiff, John Roldan ("Roldan") as well as Cruz's and Roldan's co-workers as potential witnesses at trial. *Id.* at 4. The Parties anticipated the co-workers would "testify about hours worked, how those hours were recorded, and their compensation." *Id.* The Parties further stipulated that discovery would include, "the proposed class/collective action members' compensation, classification, hours worked, and communications with AerSale employees." *Id.* at 6. The JSR also stated Cruz "may seek additional discovery on AerSale's pay practices, classification practices, employment practices, employee compensation, policies and procedures, and efforts to comply with the FLSA and NMMWA." *Id.* On February 21, 2024, the Court entered a Scheduling Order, adopting the JSR and setting deadlines for Cruz's motion for conditional certification of a FLSA collective action and for discovery on issues related to conditional certification. (Doc. 57). The Court, on an unopposed motion, extended the period for class/collective action discovery to 60 days following either the date AerSale complies with any ruling granting the instant Motion or 60 days following any order denying the instant Motion. (Doc. 84).

As with all class action representatives in federal court, Cruz must prove that he can represent a certifiable class of plaintiffs under Federal Rule of Civil Procedure 23. For this reason, discovery is divided into two phases. In the first phase, the parties may seek and produce

from Cruz's claims against AerSale. (Doc. 114). AerSale stipulated to the dismissal of Elwood Staffing Services, Inc., as a third-party defendant. (Doc. 75).

discoverable information necessary to determine whether the Court should certify the putative class. The second phase, also known as the merits phase, will follow if Cruz's putative class is certified.

Hence, the Parties proceeded with certification-phase discovery and, naturally, discovery disputes arose. The Motion addresses four topics: (1) AerSale's broad objections to withhold documentation[2]; (2) putative class documents and information; (3) AerSale's staffing partners' documents and information; and (4) a privilege log. *See* (Doc. 64) at 4–13. On May 16, 2024, AerSale filed an opposition. (Doc. 65). Cruz replied on June 13, 2024. (Doc. 67). The matter is thus ripe for decision.

## II.  <u>LEGAL STANDARDS</u>

Under the NMMWA, employers must pay employees hourly wages no less than the amounts set by the NMMWA. *See* N.M.S.A. 1978 § 50-4-22(A). Employers must also pay "one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours" in a week. *Id.* at § 50-4-22(D). The NMMWA also lets employees sue their employers for failure to pay, or underpayment of, such wages. *Id.* at § 50-4-26(C). Employees seeking recovery for unpaid overtime must prove (1) they worked more than forty hours in a week; (2) management knew or should have known that this was the case; and (3) the employees were not compensated for their overtime work. *Self v. UPS*, 1998-NMSC-046 ¶ 15, 126 N.M. 396, 970 P.2d 582, 589.

Employees who wish to sue on behalf of a class of their fellow employees in federal court

---

[2] AerSale contends this is moot because its responses in the Second Amended Responses and Objections to Plaintiff's First Requests for Production state what documents, if any, it was withholding and the objections thereto in compliance with Federal Rule of Civil Procedure 23. (Doc. 65 at 4). The Court's review of (Doc. 65-1) confirms AerSale adequately amended its responses. The Court thus finds Plaintiff's objections on the basis of insufficient specificity for withholding documents is moot.

must present evidence which satisfies the class-certification requirements of Federal Rule of Civil

Procedure 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Among other things,

they must show that

> (1) the class is so <u>numerous</u> that joinder of all members is impracticable; (2) there
> are questions of law or fact <u>common</u> to the class; (3) the claims or defenses of the
> representative parties are <u>typical</u> of the claims or defenses of the class; and (4) the
> representative parties will fairly and <u>adequately</u> protect the interests of the class.

FED. R. CIV. P. 23(a) (underlining added). To show commonality, the named plaintiff must

"demonstrate that the class members 'have suffered the same injury,'" not "merely that they have

all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349-50 (quoting *Gen.

Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The existence of "a single question of law

or fact common to the entire class" can be enough to prove commonality. *Menocal v. GEO Grp.,

Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188,

1195 (10th Cir. 2010)). Typicality, meanwhile, "requires only that the claims of the class

representative and class members are based on the same legal or remedial theory." *Menocal*, 882

F.3d at 924 (quoting *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205,

1216 (10th Cir. 2014)).

Discovery is often necessary to uncover evidence to satisfy these requirements. For

information to be discoverable, it must be "relevant to [a] party's claim[s] or defense[s] and

proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). Information is relevant when it

tends to make a fact more or less probable and when that fact is of consequence in determining the

action.[3] FED. R. EVID. 401. Though the Rules of Evidence provide this definition, "relevance" is

---

[3] Courts have also defined "relevant" information under Rule 26(b)(1) as matters which bear on, or that reasonably
could lead to other matters that bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340, 351, (1978); *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1207, 1233 (D.N.M. 2021) (analyzing
the Oppenheimer Fund definition in light of edits to the Rules). Neither party argues for one definition over the other,
and it is not clear that it makes a difference which definition the Court applies. The Rule 401 definition appears to be

construed somewhat more broadly in the discovery context than it is for admissibility at trial. *See Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 431 (D.N.M. 2022). Whether a request is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

The certification-phase limitations on discovery in this case also narrow what is currently discoverable. *See* (Docs. 52, 56, 57). Courts can limit discovery in putative class actions when certification issues are still unresolved. *Deakin*, 340 F.R.D. at 432; *see also* FED. R. CIV. P. 23(d)(1)(E) (allowing courts to issue orders dealing with "procedural matters" necessary to conduct a class action). Under the controlling Scheduling Order, the Parties may seek "proposed class/collective action members' compensation, classification, hours worked, and communications with AerSale employees" as well "additional discovery on AerSale's pay practices, classification practices, employment practices, employee compensation, policies and procedures, and efforts to comply with the FLSA and NMMWA." (Doc. 52) at 6. In line with *Deakin* and similar cases, the Court construes this limitation broadly enough to give Cruz "a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad[ly] that the discovery efforts present an undue burden" to AerSale. *Deakin*, 340 F.R.D. at 432 (quoting *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998)). This is not a prohibition on class-wide discovery, nor on discovery which may bear on the merits of Cruz's case. Certification- and merits-phase discovery are not always easily discernable, in part because Rule 23's commonality and typicality requirements intertwine class certification issues with the merits of the

---

more popular among judges in the District of New Mexico, so the Court adopts it in this case for the sake of consistency. *See, e.g., Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 431 (D.N.M. 2022).

underlying claims. *See Deakin*, 340 F.R.D. at 432. So, although the Court will not compel production of information which is obviously unnecessary to class certification, it also will not refuse to compel production simply because the information sought may be helpful in adjudicating the case on its merits.

## III.    <u>DISCUSSION</u>

Based on the law discussed above, there are three questions to ask about Cruz's discovery requests: Is the information sought relevant to the Parties' claims and defenses? Is it proportional to the needs of the case in the certification phase of discovery? And is the information reasonably necessary for the Court and the Parties to determine whether Cruz's proposed class should be certified? If the answer to all three questions is "yes," AerSale should be compelled to produce responsive documents and information.

Cruz moves to compel AerSale to respond to nine Requests for Production ("RFP") and fifteen Interrogatories. *See generally* (Doc. 64). The Court has subdivided the contested discovery requests based on the Parties' briefs, and it will address each subdivision in turn.

### A.    <u>Plaintiff and Putative Class Member Documents and Information</u>

In his First RFP and First Interrogatory, Cruz sought information pertaining to the putative class members' payroll records, personnel files, and third-party staffing companies' invoices relating to the putative class members. Specifically, RFP Nos.:

- 2 (invoices from staffing partners);
- 3 (amounts paid to staffing partners);
- 9 (hours by workweek that putative class members worked);
- 10 (compensation paid to putative class members);
- 15 (daily work performed); and
- 19 (job descriptions for putative class members).

(Docs. 64 at 5–7, *see generally* 64-1). As well as Interrogatory Nos.:

- 2 (identify individuals with discoverable information);

- 3 (identify putative class members);
- 4 (identify putative class members who worked in New Mexico);
- 5 (identify the staffing partners);
- 6 (basis for how AerSale was billed by staffing partners);
- 7 (basis for how AerSale paid staffing partners);
- 8 (per diem pay policy);
- 9 (basis for pay to putative class members);
- 10 (hours worked);
- 11 (compensation paid by work week to putative class members); and
- 12 (decision-making regarding pay practice).

(Docs. 64 at 5–7, *see generally* 64-2). AerSale does not take issue with the discovery time period

defined by Cruz in the RFP or Interrogatory. *See generally* (Doc. 65). Cruz argues that he requires

the foregoing information to obtain information on AerSale's payroll and per diem policy as well

determine whether the putative class members are similarly situated. (Doc. 64 at 5–7). In short,

the information is necessary to satisfy Cruz's burden to establish typicality and commonality of

the putative class members.

AerSale opposes the Motion for several reasons. First, it argues that the information sought

goes beyond the scope of permissible discovery at this stage of litigation. (Doc. 65 at 5). For

instance, Cruz does not just seek the putative class members contact information, hours, and pay.

*Id.* Rather, he seeks job descriptions of the putative class members and invoices received/paid to

staffing partners, and decision-making information related to the per diem policy—all of which

are irrelevant to the pre-classification stage. *Id.* Second, it claims it is not in possession of any

responsive documents or information because it was not Cruz's or the putative class members'

employer. *Id.* Third, AerSale asserts that it requested the disputed documents and information from

its staffing partners, but has yet to receive said documents and information. *Id.* To that end, AerSale

does not state when it expects to receive the documents from its staffing partners. *See id.* Nor does

AerSale suggest an anticipated production deadline. *See id.* Finally, with respect to staffing partner

invoices and payments, AerSale contends they are outside the scope of discovery and unduly

burdensome. *Id*. at 6. In particular, the respective RFPs and Interrogatories are a fishing expedition because Cruz states the invoices "usually" and "likely" contain billing information and documentation for the work performed by employees, but Cruz does not know for certain whether they will contain relevant information. *Id.* Moreover, the RFPs and Interrogatories encompass over 6,000 records which will require one employee ten (10) business days to assemble. *Id.* AerSale did not include a sworn declaration attesting to the anticipated work to prepare the responsive documents. *See id.* In sum, AerSale asserts that a significant amount of the information requested is irrelevant; that all the requested information is cumulative; that producing it would be overburdensome; and production would be contrary to the principles of phased class-action discovery.

The Court grants the Motion with respect to the RFPs and Interrogatories. The information sought is plainly relevant, as it goes to whether time, and thus compensation, was properly calculated for Cruz and the putative class members. More importantly, it goes to whether Cruz can prove numerosity, typicality, and commonality. As discussed above, Cruz will need to prove that the putative class is so numerous that joinder of all members is impracticable. It would be difficult for Cruz to do so without any documents or information identifying the scope of the putative class.

Likewise, Cruz must prove that there is a common question of fact or law among the putative class members, and this common question must show that they suffered a common injury. *See Dukes*, 564 U.S. at 349–50. The alleged common injury, at its core, is a discrepancy between the amount of time the putative class members worked and the amount of time and rate of pay for which they were paid. *See* (Doc. 61 at 1). The most direct way to show that the putative class members have this injury in common is to show, on the one hand, that their timesheets and pay records reflect straight time and overtime, and on the other, evidence showing the "per diem

policy" did not properly calculate overtime pay.[4] Timesheets and corresponding payroll records for the putative class are thus reasonably necessary for Cruz to prove the existence of a common injury in his eventual motion for class certification. Moreover, documents and information relating to AerSale's policies, invoices to/from staffing agencies, and personnel files (including, but not limited to, job duties, disciplinary action, wages, agreements) may establish that it is AerSale's stated practice to compensate overtime as straight pay and it rendered the requisite control as the putative class members' employer or joint-employer thereby demonstrating commonality. On the other hand, the documents may also be relevant to AerSale's defense that it is not and was not Cruz's nor the putative class members' employer and, thus, commonality cannot be established.

AerSale's arguments that the documents and information in dispute are irrelevant at the pre-certification stage are unpersuasive. AerSale cites *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) for the contention that—in the pre-classification stage—Cruz need only prove that he and the opt-in plaintiffs are "similarly situated," but the documents and information at issue are irrelevant to this inquiry. *See* (Doc. 65 at 2). The Court disagrees. AerSale is correct that under the *ad hoc* standard in certifying or de-certifying a class a court must determine whether the plaintiffs are, in fact, "similarly situated." *Thiessen*, 267 F.3d at 1105. A court in making its determination, however, may look beyond the "pleadings and examine the evidence produced during discovery." *Id.* at 1108. Here, the Court finds the documents and information at issue are relevant to determining whether the putative class members are "similarly situated." For example, payroll records, timesheets, documents pertaining to the per diem policy, invoices to/from staffing partners and payment policies thereto, and job descriptions are relevant in

---

[4] This does not mean Cruz necessarily needs to do this to achieve class certification, and nothing in this Order should be construed as a ruling on whether or how the putative class should be certified. The point merely illustrates why class-wide discovery, in this case, is reasonable and will be compelled.

determining whether the putative class members: (1) have the same employer, (2) were subject to the same employer practices, (3) suffered from the same miscalculation of wages owed, and (4) whether the FLSA violations were based on the same misconduct. *See Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 663 (D.N.M. 2015).

 The Court also notes that the general principle articulated in *Deakin* does not apply here. In *Deakin*, the Court was clear that "class-wide discovery related to the merits of a class action is not categorically prohibited prior to certification." *Deakin*, 340 F.R.D. at 431 (internal quotation omitted). However, the Court in *Deakin* denied the class-wide discovery not because it was required to do so, but because the plaintiffs requested a "blanket ruling requiring Defendants to respond to Plaintiffs' first sets of discovery requests with information about every putative class member" without explaining why class-wide discovery was necessary for any of those requests. *Id.* at 433–34. Cruz's requests are not so broad, nor are they unexplained. Cruz asks for specific class-wide information and connects the RFPs and Interrogatories to the requirements for certification. More importantly, the Parties' JSR expressly states that the *pre-certification discovery* would include, "the proposed class/collective action members' compensation, classification, hours worked, and communications with AerSale employees." (Doc. 52 at 6). It also provided that Cruz "may seek additional discovery on AerSale's pay practices, classification practices, employment practices, employee compensation, policies and procedures, and efforts to comply with the FLSA and NMMWA." *Id.* While *Deakin* illustrates a general legal principle, its ultimate holding does not guide the Court here.

 Nor has AerSale shown that production of the documents and supplementing its answers to the Interrogatories will be overburdensome. AerSale summarily states producing its staffing partners' invoices and payments will require 10 business days to compile. AerSale does not

provide how the records are currently maintained. Cruz suggests that in present day business electronic record keeping practices that AerSale should be able to produce invoices and payments to/from staffing agencies in Excel or another usable format pursuant to Rule 34. The Court agrees. Modern day business practices should allow AerSale to compile the requested electronic data in a timely manner.

Cruz's Motion is therefore granted as to RFP Nos. 2, 3, 9, 10, 15, and 19, as well as Interrogatory Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12.

### B.    <u>Production of Time Reports</u>

Cruz contends AerSale intentionally produced different time reports with varying data for Cruz and the opt-in Plaintiffs. (Docs. 64 at 11–12, 67 at 7.) For instance, one version includes "over time" and "card description" columns, but another version contains different fields relating to other time-related data. (Doc. 64 at 11–12). AerSale argues that it does not maintain the records sought, but produced records in the format to which they were provided. (Doc. 65 at 5). It further asserts that it requested, and intends to produce, reports from its staffing partners "with the names, addresses, contact information, time and pay records, for the respective staffing company's employee opt-ins and potential opt-ins . . . ." *Id.* at 6. AerSale does not state when the records will be produced to Cruz. AerSale also claims that including information such as, "detailed descriptions of daily tasks performed found in the 'Card Description' column" for putative class members would be unduly burdensome and is inappropriate at the pre-certification stage. *Id.* The Court disagrees.

As thoroughly discussed *supra*, documents pertaining to Cruz's and the putative class members' time records is pivotal to Cruz establishing commonality. *See* III.A. Moreover, once again, AerSale, fails to inform the Court *why* it would be unduly burdensome to produce the time

records in their entirety in an electronic format in compliance with Rule 34. Based on Cruz's screenshots the Court can only surmise that selecting a drop-down category from an electronic database is not unduly burdensome. The Court thus finds AerSale shall produce all payroll and time records in identical formats—and the same selected categories—for Cruz and the putative class members.

###    C.    <u>Staffing Partners' Documents</u>

Cruz next contends AerSale is technically in "possession, custody, and control" of relevant payroll, attendance records, and time sheets currently maintained by AerSale's staffing partners. (Doc. 64 at 7–11). Cruz cites AerSale's "Staffing Services Agreement" ("Agreement") with Launch, (Doc. 64-3), for the proposition that AerSale controlled Launch's employment practices and dictated the scope of employment records. (Doc. 64 at 9–10). In particular, the Agreement states:

> **2.14    Records:** Vendor shall maintain complete and accurate accounting records to substantiate all charges hereunder. Such records may include payroll records, job cards, attendance records and time summaries. Vendor shall retain such records for a period of three (3) years from the date of final invoice. At Client's request, and within 48 hours, Vendor will produce records for inspection by Client. Records will be produced at Client site.

(Doc. 64 at 10 *citing* Doc. 64-3 at 5).[5] AerSale argues it requested "class information" from its staffing partners, but does not state which records nor when said records will be produced. (Doc. 65 at 4–5). A review of AerSale's Second Amended Responses and Objections to Cruz's First RFPs intimates AerSale is expecting to receive or has in its possession, custody, and control

---

[5] Similar, if not identical, provisions are in AerSale's Staffing Services Agreements with Traincroft, inc, [*sic*] DBA Hire Aviation (Doc. 64-5 at 4–5) (the beginning of Section 2.14 is redacted on page 4), Strom Aviation, (Doc. 64-6 at 5), and Professional Services Development, (Doc. 64-7 at 5). Cruz also included AerSale's Staffing Services Agreement with G-Force AirCraft Maintenance, Inc. ("G-Force"), (Doc. 64-4). Section 2.14, however, is redacted in yellow instead of highlighted yellow like the previously discussed agreements. The Court thus cannot assess, at this time, whether G-Force's agreement contains a similar provision. Notwithstanding, all other provisions in G-Force's agreement are identical to the aforementioned agreements. Hence, the Court assumes for purposes of this Order that AerSale can likewise demand records to be produced within a 48-hour time period.

documents responsive to RFP Nos. 7, 9, and 10. (Doc. 65-1 at 5, 7, 8). Similarly, in its First Amended Answers to Cruz's First Set of Interrogatories, AerSale verified that it requested its staffing partners provide responsive information to Interrogatory Nos. 8, 9, 11, and 12. (Doc. 65-2 at 6–9). Nevertheless, AerSale argues Cruz could obtain the disputed documents and information via a third-party subpoena. To that end, Cruz claims third-party subpoenas would likely be contested resulting in a delay of pre-certification discovery. (Doc. 67 at 4). Further, third-party subpoenas could create an undue burden or expense on the staffing partners. *Id.* at 5.

The Court finds AerSale requesting documents and/or information from its staffing partners is consistent with the proportionality requirements of Rule 26(b)(1). On the face of AerSale's Agreement it has relative access to the relevant information. AerSale's staffing partners must produce documents and information pertaining to "payroll records, job cards, attendance records and time summaries" within 48 hours of AerSale's request. Moreover, AerSale's own verified statements evidence that it can easily obtain the sought documents and information, if it is available. *See* (Doc. 65-1 at 5, 7, 8; Doc. 65-2 at 6–9). It is even possible that AerSale is already in possession of the disputed documents and information given that AerSale served its amended discovery responses approximately five months ago. *See* (Docs. 65-1, 65-2). The Court also agrees that, in this particular case, a third-party subpoena may cause undue delay and expenditure at the pre-certification stage. Hence, AerSale requesting the documents and information from its staffing partners appears to be the least burdensome manner to collect the information sought by Cruz.

### D.    <u>Privilege Log</u>

Cruz argues AerSale should be compelled to produce a privilege log because it asserts attorney-client privilege and other privilege and privacy objections. (Doc. 64 at 12–13). Specifically, AerSale's responses to Interrogatory No. 1 (disclose witnesses who answered

interrogatories), Interrogatory No. 14 (basis for defense), and Interrogatory No. 15 (basis for good faith defense). *Id.* In turn, AerSale states it amended its responses to identify the individuals in question (Interrogatory No. 1) and withdrew its attorney-client and work product objections (Interrogatory Nos. 14 and 15). (Doc. 65 at 6–7; *see also* 65-2 at 1–2, 10). Cruz did not reply to this particular contention. The Court will deny as moot the Motion with respect to a privilege log in light of AerSale's amendments.

## IV.    <u>CONCLUSION</u>

Based on the above-discussion, Plaintiffs' Motion to Compel, (Doc. 64), is **GRANTED IN PART**.[6] The Court **THEREFORE ORDERS** as follows:

1.    No later than **December 16, 2024**, Defendant AerSale, Inc., to the extent that it has not already done so, shall provide full and complete responses to (a) Requests for Production Nos. 2, 3, 9, 10, 15, and 19, and (b) Interrogatory Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 with respect to Plaintiff Will Cruz, the opt-in plaintiffs, and the putative class members;

2.    Defendant AerSale, Inc. shall request any outstanding documents and/or information from its staffing partners pursuant to the respective Staffing Services Agreements;

3.    To the extent possible, all payroll records and timesheet records for Plaintiff Will Cruz, the opt-in plaintiffs, and the putative class members shall be produced in identical format in the manner maintained pursuant to Rule 34;

4.    Plaintiffs' Motion to Compel a privilege log is **DENIED AS MOOT**; and

5.    Pursuant to this Court's July 24, 2024, Order, the period for class/collective action

---

[6] The Court will not address attorneys' fees and costs because Plaintiff did not request them.

discovery is extended to 60 days following the date Defendant AerSale, Inc. complies with this instant Order. A scheduling conference will be set for **December 11, 2024, at 9:00 AM**. No later than **December 4, 2024**, the Parties must submit a Joint Scheduling Proposal to reset the remaining case deadlines.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE