IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILL CRUZ, *individually and*
*on behalf of others similarly situated*,

    Plaintiff,

v.                                                                                                                   No. 2:22-cv-857 GJF/KRS

AERSALE, INC.,

    Defendant,

**OPINION AND ORDER ON DEFENDANT'S MOTION TO COMPEL
COMPLIANCE WITH SUBPOEANA DUCES TECUM
ISSUED TO NON-PARTY KROUSE AERONAUTICAL SERVICES**

Currently before the Court is Defendant's Motion To Compel Non-Party Compliance With Subpoena Duces Tecum ("Motion") (Doc. 141). The Motion seeks a court order compelling Krouse Aeronautical Services ("Krause"), a non-party to this action, to produce all documents requested in a Subpoena Duces Tecum issued on January 8, 2025 (the Krause Subpoena), and attached to the Motion as Exhibit 1. (Doc. 141F-1). For the following reasons, the Motion is denied without prejudice.

*Background*

Plaintiff Will Cruz ("Cruz") filed this collective action under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"), alleging that Defendant AerSale, Inc. ("AerSale") improperly excluded "per diem" hourly payments from certain hourly workers' "regular rates" for the purposes of calculating and paying overtime. (Docs. 1, 52, 61). As part of discovery, Cruz requested that AerSale produce time records, pay records, and personnel files of potential class members, as well as respond to certain interrogatories addressing those matters. AerSale objected to the discovery requests, asserting, among other things, that the

documents and/or information in question were in the possession of third-party staffing partners. *See* (Doc. 64 at 9).

On May 16, 2024, Cruz filed a motion to compel in which he argued that AerSale's objections to producing the requested documents and information should be overruled because AerSale's contracts with its staffing partners give AerSale control over the requested information. (*Id.* at 10 (quoting language in staffing agreement with Launch Technical Workforce Solutions, LLC ("Launch"), which provides that Launch is required to retain "complete and accurate accounting records," such as "payroll records, job cards, attendance records and time summaries[] … for a period of three (3) years from the date of final invoice," and, "[a]t [Aersale's] request, and within 48 hours, … [to] produce [such] records for inspection by [AerSale]")). Cruz asserted that "[a]ll AerSale's staffing agreements contain identical provisions," and in support attached copies of AerSale's agreements with four other staffing companies: G-Force Aircraft Maintenance, Inc. ("G-Force"), Hire Aviation Staffing Solutions, LLC ("Hire Aviation"), Strom Aviation, Inc. ("Strom"), and PSD Professional Services Development Inc. ("PSD") (Doc. 64 at 10).

This Court agreed with Cruz's argument, noting in an order dated November 5, 2024, which granted Cruz's motion to compel in part, that "[o]n the face of AerSale's Agreement it has relative access to the relevant information," and that "AerSale requesting the documents and information from its staffing partners appears to be the least burdensome manner to collect the information sought by Cruz." (Doc. 118 at 13). Accordingly, the Court ordered AerSale to request any outstanding documents and/or information from its staffing partners pursuant to the respective Staffing Services Agreements and to provide those to Cruz in response to Cruz's discovery requests. (*Id.* at 14).

2

Following entry of the order compelling discovery, a status conference was held on December 12, 2024, during which the Court asked AerSale's counsel when she expected to provide the discovery that AerSale had been ordered to produce. (Doc. 124). AerSale's counsel responded that she could not provide a date certain because of difficulties AerSale was having in obtaining documents and information from the third-party staffing companies. Counsel further explained that the staffing companies were resisting AerSale's requests for information because AerSale was currently engaged in litigation with those parties.[1] A discussion followed regarding whether AerSale could obtain the information by issuing third-party subpoenas to the staffing companies. Counsel for AerSale expressed uncertainty regarding whether subpoenas against those companies could be enforced. In response, the Court proposed that counsel issue the subpoenas and if the staffing companies took the position that they were improper, they could move to quash them. Whether the subpoenas were proper under the federal rules could then be resolved in the context of a ruling on a motion to quash. (*Id.*).

The docket indicates that AerSale complied with the Court's proposal by serving subpoenas on eleven third-party staffing agencies: PSD (Doc. 129); APA Aviation Staffing, LLC DBA APA Services ("APA") (Doc. 130); Ascend Staffing (Doc. 131); Krouse (Doc. 132); Leeds Professional Resources ("Leeds") (Doc. 133); Lumpstaff LLC ("Lumpstaff") (Doc. 134); XCalibur Aircraft Solutions LLC ("XCalibur") (Doc. 135); Robert Half, Inc. ("Robert Half")

---

[1] The Court is aware that AerSale filed a third-party complaint against Launch (Doc. 16), and that the parties were ordered to arbitrate that dispute pursuant to their staffing agreement. (Doc. 49 at 26–27). AerSale later filed an amended third-party complaint naming six additional staffing partners: Aviation Personnel, LLC ("Aviation Personnel"), Elwood Staffing Services, Inc. ("Elwood"); G-Force; Hire Aviation; PSD; and Strom. AerSale's claims against Strom were also stayed and referred for binding arbitration. (Doc. 115). AerSale apparently has settled its claims against the other named third-party staffing companies. The Court has not been made aware of any currently pending or recently terminated litigation between AerSale and Krouse, the subpoenaed nonparty at issue here.

3

(Doc. 136); VP Aviation Technical Services LLC ("VP Aviation") (Doc. 137); Moore Advanced, Inc. ("Moore") (Doc. 138); and S.T.S. Aviation, LLC ("S.T.S.") (Doc. 139). Assuming the docket accurately reflects the responses that AerSale received to these subpoenas, PSD is the only staffing company of the eleven that were sent subpoenas who provided a response. *See* (Doc. 129). AerSale filed motions to compel compliance with the subpoenas issued to four other third-party staffing companies: Ascend, Krouse, Lumpstaff, and Moore. The status of the six remaining nonparties which were sent subpoenas (APA, Leeds, XCalibur, Robert Half, VP Aviation, and S.T.S.) is unclear.

## *Discussion*

### A. Service

As an initial matter, the Court has considered whether service of the Krause Subpoena complied with Rule 45. Although Rule 45(b)(2) permits service of a subpoena anywhere within the United States, Rule 45(b)(1) provides that the service must be upon the "*person* named [in the subpoena]," and further, must "be made by *delivering* a copy thereof to such person[.]" FED. R. CIV. P. 45(b)(1) (emphasis added). "The longstanding interpretation" of this language "has been that personal service of subpoenas is required." 9A FED. PRAC. & PROC. CIV. § 2454 (3d ed.) ("The use of the word 'delivering' in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally."). "[T]o satisfy Rule 45's mandate of 'delivering a copy to the named person' when the 'person' is a corporation, there must be delivery to an appropriate agent, as identified by Rule 4(h)." *In re Newbrook Shipping Corp.,* 31 F.4th 889, 897 (4th Cir. 2022); *see also Netlist, Inc. v. Montage Tech., Inc.,* Case No. 22-mc-80337-VKD, 2023 WL 2940043, *2 (N.D. Cal. Feb. 24, 2023) (stating that it was appropriate to refer to Rule 4 to fill in gaps with respect to personal service of subpoena on a corporation); FED. R. CIV. P. 4(h)(1)(B) (providing

4

that service on a corporation can be accomplished "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires.").

AerSale's Motion states that, "[o]n January 9, 2025, AerSale served a subpoena on Krause through its registered agent as evidenced by the Return of Service AerSale filed with the Court. [ECF 132]." (Doc. 141, ¶ 4). The Return of Service is certified by the person effecting service, as required by Rule 45(b)(4), and indicates that the subpoena was "personally deliver[ed] to … Steven Krouse." (Doc. 132). Thus, the Return of Service appears to establish that the subpoena was personally served on an appropriate agent of the company. *See* FED. R. CIV. P. 4(h)(1)(B); *In re Newbrook Shipping Corp.,* 31 F.4th 889, 897 (4th Cir. 2022).

> B. **Rule 45 Does Not Authorize The Court To Issue An Order To Compel Krause To Comply With The Subpoena.**

AerSale "requests that this Court compel Krause to produce all of the documents requested in the subpoena attached as Exhibit 1, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i)." (Doc. 141 ¶ 9). The cited Rule provides as follows:

> (d) *Protecting a Person Subject to a Subpoena; Enforcement*. …
> > (2) *Command to Produce Material or Permit Inspection. …*
> > > (B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. *If an objection is made*, the following rules apply:

5

> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

FED. R. CIV. P. 45(d)(2)(B)(i) (emphasis added).

By its plain language, an order compelling compliance pursuant to this provision is permitted only "[i]f an objection is made." *See HI.Q, Inc. v. ZeetoGroup, LLC,* No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *11 (S.D. Cal. Nov. 29, 2022) ("When a nonparty *raises timely objections to a subpoena duces tecum*, the nonparty is not required to produce documents, or even search for them, until the propounding party obtains an order directing compliance.") (emphasis added) (citing Rule 45(d)(2)(B)(i)). The Motion acknowledges that Krause has not objected to the Subpoena. *See* (Doc. 141 ¶ 6 (stating that "Krause was required to respond by January 21, 2025, at 10:00 A.M"; that "AerSale has yet to receive any of the requested documents or an affirmative response from the custodian of records that the requested documents have been provided"; and that "Krause has not filed anything with this Court in which it formally objects to the subpoena")). "[A]lthough Rule 45(d)(2)(B) generally applies to parties' efforts to obtain written or document discovery from third parties through a subpoena, Rule 45(d)(2)(B) by its own terms applies only where the third party makes objections. And, here, no objections were served." C*ypress Prop. & Cas. Ins. Co. v. Jallad & R Invs., LLC*, No. 3:21-CV-1478-L, 2023 WL 2899461, at *2 (N.D. Tex. Mar. 2, 2023), *report and recommendation adopted*, No. 3:21-CV-1478-L, 2023 WL 2895571 (N.D. Tex. Apr. 10, 2023).

Based on the facts set forth in the Motion from which it appears that subsection (d)(2)(B)(i) of Rule 45 is inapplicable, AerSale's only avenue of relief for Krause's failure to respond to the subpoena is under Rule 45(g), which permits a court to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it," FED. R.

6

CIV. P. 45(g). *See Bds. of Trs. of Cement Masons & Plasterers Health & Welfare Tr. v. Sound Floors Gypsum Concrete LLC*, No. 2:20-CV-01307-RAJ, 2021 WL 4307069, at *2 (W.D. Wash. Sept. 22, 2021) ("Rule 45 is the only authority governing the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum," and "Rule 45's only enforcement mechanism is contempt.") (internal quotation marks and citation omitted).[2] The "proper means" for AerSale to seek relief under Rule 45(g) is to file "a motion for an Order to Show Cause … why [Krause] … should not be held in contempt of court." *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-CV-668 (MJD/LIB), 2014 WL 12756820, at *5 (D. Minn. Jan. 17, 2014) (quoting *Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 720-21 (8th Cir. 2002) (Loken, J., dissenting)); *see also Bowers v. Mortgage Elec. Registration Sys., Inc.,* No. CIV. A. 10-4141-JTM, 2011 WL 6739588, at *2 (D. Kan. Dec. 22, 2011) (where the defendants "requested that non-party Home Quest be held in contempt for its failure to respond to the subpoena, or alternatively be commanded to appear and show cause why it should not be held in contempt for its failure to respond"). AerSale's Motion does not seek either a contempt order or an order to show cause, and therefore fails to invoke Rule 45(g).[3]

---

[2] *See generally In re Markus,* 78 F.4th 554, 566 (2d Cir. 2023) ("[U]nlike Rule 26 and Rule 37 of the Federal Rules of Civil Procedure, Rule 45 has no self-contained enforcement mechanism and relies instead on a district court's inherent contempt authority to enforce compliance."); *Pennwalt Corp. v. Durand-Wayland, Inc*., 708 F.2d 492, 494 (9th Cir. 1983) (stating that Rule 45(g) is the only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena) (discussing previous version of Rule 45); *MetroPCS v. Thomas*, 327 F.R.D. 600, 608 (N.D. Tex. 2018) ("When a non-party to a lawsuit ... is served with an overly broad subpoena duces tecum, ... the non-party has four procedural options. First, it may ignore the subpoena. This is the worst option, almost certain to result in a contempt citation under Rule 45(g) and a finding that all objections have been waived. …." (quoting *Arthur J. Gallagher & Co. v. O'Neill*, Civ. A. No. 17-2825, 2017 WL 5713361, at *1-*2, *4 (E.D. La. Nov. 27, 2017))).

[3] "[C]ourts have found that a Rule 45 subpoena constitutes an order of the court," such that a non-party may be held liable in civil contempt for failure to comply with the subpoena. *Coston v. Nangalama*, No. 2:10-CV-02009-MCE-EFB (PC), 2024 WL 3939109, at *3 (E.D. Cal. Aug. 26,

The Court has considered whether it would be proper to construe AerSale's Motion as a motion seeking a contempt order notwithstanding AerSale's failure to cite Rule 45(g) other than in passing or ask for relief under that provision. But like in *Boards of Trustees of Cement Masons*, where the court declined to take such an approach, AerSale's motion, "[m]easuring just a few paragraphs long and lacking any analysis, … is sparsely supported as it is." 2021 WL 4307069, at *2. Additionally, the Court must consider the fact that, "[w]hen a party seeks contempt sanctions against a nonparty, the nonparty has a right to notice and an opportunity to be heard." *Morales v. Samararatne*, No. SA CV 24-MC-00010-FWS (DFM), 2024 WL 4858581, at *2 (C.D. Cal. Nov. 21, 2024) (citing *S.E.C. v. Hyatt*, 621 F.3d 687, 696-97 (7th Cir. 2010)); *see also BJ's Fleet Wash, LLC v. City of Omaha,* No. 8:22CV131, 2023 WL 2964432, at *4 (D. Neb. Mar. 8, 2023), *report and recommendation adopted,* No. 8:22CV131, 2023 WL 2682292 (D. Neb. Mar. 29, 2023). Although AerSale has filed a certificate of service indicating that the Motion was served on Krause

---

2024); *see also EEOC v. Chipotle Mexican Grill, Inc.*, No. 17CV05382BLFSVK, 2019 WL 3842004, at *3 (N.D. Cal. Aug. 15, 2019) ("even though subpoenas are issued by attorneys, 'defiance of a subpoena is nevertheless the act of defiance of a court order and exposes the defiant witness to contempt sanctions,' at least where the recipient does not object in writing to the subpoena.'" (quoting Adv. Cmte. Note to Rule 45(a)); *but compare Patel v. Bhakta.*, No. 1:15-CV-562-MHC-ECS, 2015 WL 12159208, at *4 (N.D. Ga. Apr. 29, 2015) ("[I]t would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena .... Disobedience of such an order may be treated as contempt." (citing *inter alia Smith v. Pefanis*, 652 F. Supp. 2d 1308, 1342 (N.D. Ga. 2009) (non-parties' failure to explain noncompliance with court's previous order granting plaintiff's motion to enforce Rule 45 subpoenas warranted civil contempt sanctions)). However, a magistrate judge generally lacks authority to issue an order finding a nonparty in civil contempt. *See Coston*, 2024 WL 3939109, at *3 (citing 28 U.S.C. § 636(e), and *Delorme v. Big Think, Inc.*, No. 2:23-mc-00037-FLA-MAR, 2023 U.S. Dist. LEXIS 73045 at *4 (C.D. Cal. Apr. 26, 2023)). Instead, a magistrate judge's "role is to determine whether the [subpoenaing party] has established a prima facie case of contempt," such "that further contempt proceedings are warranted and, if so, certify those facts and order the responding party to show cause why they should not be held in contempt by reason of those facts." *Id.* (internal quotation marks and citations omitted); *see also In re Amon,* 347 F.R.D. 17, 19 (S.D.N.Y. 2024) ("in connection with the issuance of contempt sanctions, a magistrate judge functions to certify the facts")*.*

(Doc. 145), the Motion that was served seeks an order compelling Krause to comply with the subpoena, and thus would not have provided Krause with notice of a possible contempt order. "Upon a finding of a willful failure to comply with a court order, a contemnor may be jailed until compliance with the district court's order." *Morales*, 2024 WL 4858581, at *3 (citing *S.E.C. v. Elmas Trading Corp.*, 824 F.2d 732 (9th Cir. 1987) ("When the petitioners carry the 'keys of their prison in their own pockets,' the action is 'essentially a civil remedy.'") (quoting *Shillitani v. United States*, 384 U.S. 364, 368 (1965)). To put a nonparty in peril of incurring such a sanction, at the very least the motion served on the nonparty should actually request it.

    **C.**    **AerSale's Motion Does Not Address The Threshold Question Of Whether *This* Court Is The Proper Court To Enforce The Krause Subpoena.**

Even if Rule 45 authorized an order compelling compliance, or if AerSale amended its Motion to seek a contempt order under subsection (g) instead, the Court still would be unable to grant AerSale any relief for Krause's non-compliance. Rule 45(a)(2) provides that subpoenas are issued by the court in which the action is pending. Accordingly, this Court was the proper issuing court for the subpoenas. However, an order holding a third party in contempt under Rule 45(g), as well as an order under any other provision of Rule 45, must be issued in most cases by "[t]he court for the district where compliance is required[.]" *See* FED. R. CIV. P. 45(g); FED. R. CIV. P. 45(d)(2)(B)(i); FED. R. CIV. P. 45(d)(3)(A); FED. R. CIV. P. 45(d)(3)(B).[4] The threshold question therefore, which the Motion fails to address, is whether this Court is located in the district where the Krause Subpoena requires compliance.

---

[4] There is a limited exception for when the court where compliance is required transfers the motion to the issuing court. *See* FED. R. CIV. P. 45(f) ("*Transferring a Subpoena-Related Motion*"). But even if the exception applied here, the initial enforcement action still must be brought in the district where compliance is required, and only that court can make the decision of whether to transfer to the issuing court.

"Determining which court is the court for the district where compliance is required requires looking to the Subpoena[ ] [itself] and Rule 45's relevant provisions." *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 708 (N.D. Tex. 2017). With respect to the production of documents, Rule 45(a)(1)(A) directs that "[e]very subpoena must: ... command" the production of documents and electronically stored information "*at a specified time and place*." FED. R. CIV. P. 45(a)(1)(A)(iii) (emphasis added). Rule 45(c) is titled "Place of Compliance" and provides, in part, that "[a] subpoena may command: … production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A). And Rule 45(d)(2)(A) explains that "[a] person commanded to produce documents, electronically stored information, or tangible things, … need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial." FED. R. CIV. P. 45(d)(2)(A).

With these provisions in mind, there are two competing views for determining the "place of compliance" under Rule 45. Some courts "take[ ] the position that … the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena as required by Rule 45(a)(1)(A)(iii)." *CSS, Inc.*, 354 F. Supp. 3d at 709 (citing cases). "Other court decisions disagree, concluding instead, based in part on discussions in the Advisory Committee Notes,[5] that 'the place where compliance is required depends on where the recipient resides or works,' treating a proper 'place of compliance' under Rule 45(c) as determinative in identifying the district in which subpoena-related motions and applications are to be made." *Id.* (citing case law). Both viewpoints have substantial support in the case law. *See HI.Q, Inc.* 2022

---

[5] *See* FED. R. CIV. P. 45(f), advisory committee notes (2013 amendments) ("Although Rule 45(a)(1)(A)(iii) permits the subpoena to direct a place of compliance, that place must be selected under Rule 45(c).").

10

WL 17345784, at *7 ("whether the 'place of compliance' refers to that named on the face of a subpoena, or whether those terms are tethered to the location of the documents sought or the person subpoenaed … is not immediately apparent"); *Adams,* 2020 WL 489523, at *2 (collecting case law reaching various conclusions regarding which district is the "place of compliance"). This Court need not choose between the two competing approaches however, [6] because, in either case, the district in which this Court is located is not the proper district for seeking to enforce the Krause Subpoena.

One the one hand, if the Court looks only to the face of the subpoena, without regard to whether that place satisfies Rule 45(c)'s 100-mile limitation, the place of compliance is in Dallas, Texas.[7] Therefore, this Court would not be authorized to enforce the subpoena under any provision of Rule 45. *See, e.g., Adams,* 2020 WL 489523, at *3 (holding that although the plaintiff served the subpoena in Kansas, the place of compliance was Arizona where Plaintiff's counsel's office

---

[6] There are good arguments on both sides. The rationale for looking only to the face of the subpoena, even if it identifies a place of compliance that conflicts with subsection (c) of Rule 45, is to avoid the court in which enforcement is sought having to "resolve a substantive geographical limits issue under Rules 45(c) simply to decide if it is the court with authority to decide [whether to enforce the subpoena] …—in the first place." *CSS, Inc.*, 354 F. Supp. 3d at 709 (finding it "consistent with Rule 45's text and structure as well as the practical realities that courts presented with subpoena-related motions and applications face," for "the court for the district where compliance is—whether properly or not—required on the face of the subpoena" to decide whether "a subpoena's listing a place of compliance … violates Rule 45(c)'s requirements"). On the other hand, it also makes sense that the place of compliance must take into account the 100-mile limit in Rule 45(c), because Rule 45 "expressly requires minimizing the burden placed on a nonparty," and "[t]hat [goal] is best accomplished by resolving this dispute and requiring production of documents and deposition testimony to occur where the nonparty's principal place of business, responsive documents, and the deponent are located." *HI.Q, Inc.* 2022 WL 17345784, at *7 (citing FED. R. CIV. P. 45(d)(1)); *cf.* FED. R. CIV. P. 37(a)(2) (providing that a motion to compel "a nonparty must be made in the court where the discovery is or will be taken").

[7] *See* (Doc. 141-1 at 2 (commanding Krause to produce the requested documents and electronically stored information at "Jackson Lewis, P.C. 500 North Akard Street, Suite 2500, Dallas, TX 75201").

11

was located, because that was "the location for production identified on the subpoena"). That would be the case even though the documents might be produced electronically. *See Gutierrez v. Uni Trans, LLC,* No. CV 21-73 KWR/SCY, 2021 WL 2821071, at *2 (D.N.M. July 7, 2021) (stating that if the place of compliance is where the subpoena directs compliance, it does not matter that "the production of the documentary information sought through the subpoena[ ] likely would not occur in person" but instead would occur by mail or electronic transmission of the documents in question"); *CSS, Inc.*, 354 F. Supp. 3d at 709, 710 ("Under Rule 45, … the place of compliance must be a physical 'place' subject to 'geographical limits' and capable of being measured according to mileage. … [A]n email address does not qualify as a location or place where compliance is required under Rule 45, although the subpoenaing party and the subpoenaed person could agree to production by electronic means.").

On the other hand, if the Court were to follow the second approach, the Court's best guess as to where Krause "resides, is employed or regularly conducts business in person" would have to be Starke, Florida.[8] If that is the case, then AerSale would be required to bring an action to enforce

---

[8] AerSale does not provide any information concerning the place with Krause "resides, is employed or regularly conducts business in person." As courts have noted, determining the place where the third party named in the subpoena "resides, is employed or regularly conducts business in person" is usually a "fact-intensive" inquiry that would require "hearing from the subpoenaed person." *CSS, Inc,* 354 F. Supp. 3d at 710. The subpoena here is directed to "Krouse Aeronautical Services c/o Steven Krouse, 18389 Nw71st Ave. Starke, FL 32091." (Doc. 141-1). Although this designation might not be dispositive, courts will generally look to the address for the named party shown on the subpoena in making a quick assessment regarding that factual issue. *See, e.g., Gutierrez,* 2021 WL 2821071, at *2 (considering third-party subpoenas directing compliance in Albuquerque, New Mexico to businesses that, according to the face of the subpoenas, were located in Pennsylvania, Florida, Texas, Massachusetts, Kansas, and California); *see also HI.Q, Inc.*, 2022 WL 17345784, at *7 ("Case law suggests that making the 'place of compliance' determination may vary based upon the type of motion filed and the facts available to the reviewing court." (citing *Merch. Consulting Grp., Inc. v. Beckpat, LLC,* No. 17-11405-PBS, 2018 WL 4510269, at *3 (D. Mass. July 11, 2018), *report and recommendation adopted (*Aug. 1, 2018) ("In this instance, the issue arises under Rule 45(g). The court has little information apart from the fact that the place of

the subpoena in Florida. *See, e.g., Oliver v. Meow Wolf, Inc.*, No. CV 20-237 KK/SCY, 2022 WL 2390483, at *4–5 (D.N.M. July 1, 2022) ("On their face, none of these companies appear to be New Mexico companies, meaning the place of compliance—where the subpoenaed entity "resides or works"—would not be in this district. As such, this Court would not have jurisdiction to enforce or quash the various subpoenas."); *Guiterrez,* 2021 WL 2821071, at *2 (stating that, "if [the location shown on the face of the subpoena] is not the place of compliance, the place where the subpoenaed entity 'resides or works' is likely the place of compliance," and, [i]n that case, … the motion[] to enforce should be filed in [that] district).

In short, the place of compliance where AerSale may seek enforcement of the Krouse Subpoena could be Dallas, Texas, or it could be Starke, Florida, but it is not Las Cruces, New Mexico. Therefore, AerSale must seek enforcement of the Krause Subpoena in one of those two other places. Only if Krause could be said to "regularly transact business," FED. R. CIV. P. 45(c), within 100 miles of Las Cruces, New Mexico would it be possible to argue that this Court is the proper court to enforce the subpoenas, and there is no reason to believe that is the case.

ACCORDINGLY, Defendant's Motion To Compel Non-Party Compliance With Subpoena Duces Tecum issued to Non-Party Krause Aeronautical Services (**Doc. 141**) is denied without prejudice to seeking an appropriate remedy for Krause's non-compliance in the court for the district where compliance is required.

IT IS SO ORDERED this 16th day of May, 2025.

*/s/ Kevin Sweazea*
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

---

compliance designated in the subpoena duces tecum is Boston, Massachusetts, and Blue Square, although located in Arizona, has interposed no objections to the subpoena.")).

13