IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILL CRUZ, *individually and*
*on behalf of others similarly situated*,

    Plaintiff,

v.                                                                                                                                 No. 2:22-cv-857 GJF/KRS

AERSALE, INC.,

    Defendant,

## ORDER AMENDING [118] ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

        This matter is before the Court sua sponte upon the Court's review of the current procedural posture and status of discovery, and consideration of the statements of counsel during the two most recent status conferences. For the reasons that follow, the Court now amends its previous Order granting Plaintiff's Motion to Compel (Doc. 118) as explained in greater detail below.

### The Court's Previous Ruling

        Plaintiff Will Cruz ("Cruz") filed this collective action under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"), alleging that Defendant AerSale, Inc. ("AerSale") improperly excluded "per diem" hourly payments from certain hourly workers' "regular rates" for the purposes of calculating and paying overtime. (Docs. 1, 52, 61). As part of discovery, Cruz requested that AerSale produce time records, pay records, and personnel files of potential class members, as well as respond to certain interrogatories addressing those matters. AerSale objected to the discovery requests, asserting, among other things, that the documents and/or information in question were in the possession of third-party staffing partners. *See* (Doc. 64 at 9). Cruz responded to AerSale's objection by moving to compel, arguing that AerSale's objections to producing the requested documents and information should be overruled

because AerSale's contracts with its staffing partners give AerSale "control" over the requested information within the meaning of Federal Rule of Civil Procedure 34(a). (*Id.* at 10 (quoting language in Staffing Services Agreement)).

Pursuant to Rule 34(a), a party may request another party to produce documents within that party's "possession, custody, or control." FED. R. CIV. P. 34(a). Federal courts construe "control" in Rule 34 broadly. For example, a party is not required to have physical possession of documents for control to be present. *See Parrish v. Premier Directional Drilling, L.P.*, No. SA-16-CA-00417-DAE, 2017 WL 8774230, at *5 (W.D. Tex. Mar. 1, 2017) (defendant's argument that it need not produce documents that are not in its actual possession held unavailing). Rather, "so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.3d 142, 160 (3d Cir. 2004); *see, e.g., United States v. 2121 Celeste Road SW, Albuquerque, N.M.,* 307 F.R.D. 572, 590 (D.N.M. 2015) ("[C]ourts have broadly construed control as 'the legal right, authority, or practical ability to obtain the materials sought upon demand'" (discussing meaning of "control" in Rule 45) (quoting S.*E.C. v. Credit Bancorp, Ltd.,* 194 F.R.D. 469, 471 (S.D.N.Y. 2000))).

AerSale does not dispute that it has a contractual right to obtain the documents in question. And courts are nearly uniform in holding that a contractual right to the documents satisfies the element of "control" in Federal Rule of Civil Procedure 34(a). *See, e.g., Haskins v. First Am. Title Ins. Co.*, No. CIV. 10-5044 RMB/JS, 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012) ("a litigating party has control of documents if a contractual obligation requires a non-party to provide requested documents to the litigating party upon demand" (citing cases)).

Nevertheless, in response to Cruz's motion to compel, AerSale argued that it should not be required to produce the documents in question because Cruz could obtain those documents for

2

himself with a Rule 45 subpoena to the third-party staffing companies. (Doc. 65 at 5). Cruz responded in turn that "AerSale could obtain the documents unburdened by processes Cruz would face, including issuing and serving subpoenas, negotiating discovery responses, briefing motions to quash/compel, and suffering delays associated with every step." (Doc. 67 at 5). This Court agreed with Cruz, stating that "a third-party subpoena by Cruz may cause undue delay and expenditure at the pre-certification stage." (Doc. 118 at 13). "Hence," the Court said, "AerSale requesting the documents and information from its staffing partners appears to be the least burdensome manner to collect the information sought by Cruz." (*Id.*). Thus, the Court ordered AerSale to request any outstanding documents and/or information from its staffing partners pursuant to the respective Staffing Services Agreements, and to provide those to Cruz in response to Cruz's discovery requests. (*Id.* at 14).

## **Post-Order Developments**

Following entry of the Court's order compelling discovery, a status conference was held during which AerSale's counsel reported that several of its staffing partners were resisting AerSale's requests for documents pursuant to the Staffing Services Agreements. (Doc. 124). The reason for this resistance apparently was that AerSale was either already engaged in litigation with those parties or litigation was anticipated.[1] To overcome the problem of staffing companies refusing to comply with their contractual obligation to provide AerSale with certain documents and information upon AerSale's request, AerSale agreed to attempt to obtain the documents by serving the staffing companies with subpoenas duce tecum. (Docs. 124, 126). AerSale represented to the Court at the most recent status conferences that it had complied with the Court's request to

---

[1] The Court is aware that AerSale has been involved in litigation with several of its staffing companies. It has reached a settlement with a number of its staffing partners, while its claims against others are currently being arbitrated.

3

issue third-party subpoenas seeking the documents at issue. It reported, however, that several of the staffing partners have simply ignored the subpoenas. (Doc. 152). As a result, AerSale sought to enforce the subpoenas served on the non-compliant staffing partners by bringing a motion for enforcement in these proceedings. *See* (Docs. 140-143). But the Court recently issued orders denying those motions without prejudice because, among other things, this district is not the proper district in which to seek enforcement of the subpoenas. Instead, AerSale would be required by Rule 45 to seek enforcement in the districts in which the third-party staffing companies are located. *See* (Docs. 154-157).

### Amendment to the Order Compelling Rule 34 Production of Documents In the Possession of Third Party Staffing Companies (Doc. 118)

Cruz's motion to compel, and the Court's order compelling AerSale to produce documents in the possession of third-party staffing agencies, were based on the assumption that AerSale could obtain the documents simply by "pick[ing] up a telephone and [requesting] the[m]." *2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. at 590. It was expressly pointed out by both Cruz and the Court that, while AerSale could secure the documents by simply requesting them, Cruz would have to rely on the legal process of issuing third-party subpoenas to obtain them. As it turns out, however, AerSale's contractual right to the documents may not have had the desired effect of avoiding legal processes for obtaining the documents. Instead, AerSale has had to resort to the same legal processes that Cruz would be required to use in seeking the documents directly from the staffing companies. While in most cases a contractual right might suffice to obtain the documents simply by asking for them, the staffing companies are not completely disinterested third parties indifferent to whether the documents are produced. Rather, at least some of those companies appear to be resisting AerSale's assertion of its contractual right to obtain the documents out of their own self-interest in the subject matter of this litigation.

4

When a third party has a potential interest in the litigation at hand that may be adverse to the party seeking the documents through a Rule 34(a) request to the party with a contractual right to the documents, the latter may actually have little power to force the third party to comply with a request for the documents outside of satellite litigation regarding the contractual right. In other words, resort to legal processes ultimately may be necessary, regardless of the presence of a contractual right. In this scenario, the contractual right, in and of itself, becomes less compelling a reason for finding "control" in the sense required for production under Rule 34. *See, e.g., Searock v. Stripling*, 736 F.2d 650, 654 (11th Cir. 1984) (where the defendant represented that "he was diligently attempting to obtain" invoices from repair shops, but ultimately was only able to produce some of them, the court observes that the defendant's asserted "control" over the documents may not have been "in the sense required for production under Rule 34").[2]

The court in *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276 (N.D. Cal. 2015), faced a somewhat similar situation to that here. The plaintiff in that case challenged the practices of the defendant, Verizon Wireless, in collecting past due accounts. *Id.* at 279. A substantial portion of the documents requested by the plaintiff in discovery were documents in the custody of third-party vendors that Verizon used as debt collectors. *Id.* at 283. The plaintiff urged the court to compel Verizon to produce the documents because they were within its control, while Verizon insisted that even if the documents were in its legal control, requiring it to produce them would pose an undue burden, and that the court should instead require the plaintiff to issue Rule 45 subpoenas to obtain the documents. *Id.* Without specifically addressing whether it was an undue

---

[2] *See also 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. at 591 ("Unlike a patient's ability to access his or her medical files or a client's ability to access his or her case file, Schwartzenberger does not appear to have the legal right, authority, or practical ability to obtain the Los Padillas File upon demand. Nor does Schwartzenberger appear to have the ability to access the file in the normal course of business.").

burden on Verizon to require it to obtain the documents, the court ruled instead based on the practical reality that Verizon's ability to force the third parties to cooperate could be limited. As the court explained, "the vendors' refusal thus far to cooperate with Verizon to produce discovery may make it difficult for [the] [p]laintiff to obtain relevant documents in that manner–at least anytime soon. Thus, [the] [p]laintiff may well have to resort to Rule 45." *Id.* at 284.

Similarly, in *Searock,* 736 F.2d at 654, the Eleventh Circuit said that it did not need to "completely rest [its] holding on this factor of 'control,'" but instead found "that the primary dispositive issue is whether [the defendant] made a good faith effort to obtain the documents over which [it] may have indicated he had 'control' in whatever sense, and whether after making such a good faith effort he was unable to obtain and thus produce them." *Searock,* 736 F.2d at 654.

As in *Lofton* and *Searock*, the Court can only require that AerSale "diligently and in good faith seek to obtain the documents." *Searock*, 736 F.2d at 654. This means, of course, that "there can be no collusion between [AerSale] and [the third-party staffing companies] to deny [Cruz] access to the … documents [Cruz] seeks." *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 522 (D. Kan. 2007). "There can be no 'official request' with a proverbial knowing wink to the third-party that it need not comply. While the [C]ourt has no reason to distrust [AerSale] or [its] counsel, the [C]ourt cautions the parties that it will not tolerate any insincere or half-hearted attempt to obtain these documents." *Id.*

Currently, there is no evidence that AerSale has acted willfully, in bad faith, or is at fault in failing to obtain the documents from certain of the third-party staffing companies. That being the case, AerSale's failure to obtain the documents from those companies may simply mean that those documents in fact are *not*, as previously assumed, "easily obtained" by AerSale "simply ask[ing], or employ[ing] [its] 'right or ability to influence'" those companies to cooperate and turn

over the documents. *Ice Corp.,* 245 F.R.D. at 21 (citations omitted). If AerSale has made a good faith attempt to obtain documents from a third-party staffing company by informally requesting those documents pursuant to its contractual rights, and nevertheless been denied access to them--as appears to be the case for some of the staffing companies as shown on the current record--the Court will not require AerSale to instigate and pursue satellite litigation in districts across the country to enforce third-party subpoenas that are being ignored by the third-party staffing companies. Requiring AerSale to do so would be contrary to the rationale in the Court's order granting Cruz's motion to compel that it was more efficient and less burdensome for AerSale to obtain the documents than to require Cruz to seek the documents directly from the third-party staffing companies. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 138 (2d Cir. 2007) ("We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents. However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." (citing *In Re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 530 (S.D.N.Y. 1996)); *Lofton,* 308 F.R.D. at 384 (directing the plaintiff to seek the documents in question through Rule 45 subpoenas, but, in recognition of the significant financial burden that litigating the subpoenas in district all over the country where the vendors were located would impose on the plaintiff, instructing Verizon to ask the third-party vendors to consent to litigate the Rule 45 subpoenas in the district where the litigation was pending).[3]

---

[3] *Cf. Searock,* 736 F.2d at 654 (observing that if the documents were that important to the plaintiff's case, the plaintiff could and would have taken steps to subpoena the documents prior to trial, and concluding from the fact that the plaintiff did not do so that the plaintiff was not prejudiced by the defendant's failure to obtain and produce them).

In sum, the Court amends its previous ruling related to documents in the possession of AerSale's staffing partners (Doc. 118 at 12-13) to provide that if any of the documents responsive to Cruz's discovery requests are not in AerSale's physical possession, but are in the possession of a third party, and AerSale has been unable to obtain the documents despite having made good faith efforts to obtain them by requesting the third party to provide them pursuant to AerSale's contractual rights, then Cruz should attempt to obtain the documents directly from the third-party staffing companies who are refusing to cooperate with AerSale's requests by issuing Rule 45 subpoenas for those documents. AerSale shall assist Cruz in obtaining the non-privileged responsive documents directly from the third parties in any manner that it can, such as executing required release forms, document request forms, and/or using any influence it may have over the third-party staffing companies to persuade them to agree to litigate Cruz's Rule 45 subpoenas in this district. *See Lofton,* 308 F.R.D. at 384; *Alex v. KHG Of San Antonio, L.L.C.*, No. SA-13-CA-728-OLG, 2014 WL 12489735, at *9 (W.D. Tex. Aug. 6, 2014).

IT IS SO ORDERED this 20th day of May, 2025.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE