**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

WILL CRUZ, for himself
and others similarly situated,

Plaintiff,

v. Civ. No. 22-857 GJF/KRS

AERSALE, INC.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

This case arises from the way Defendant AerSale, Inc. ("AerSale") paid overtime to Plaintiff Will Cruz ("Cruz") and other aircraft mechanics and technicians like him who worked for AerSale. Cruz alleges that AerSale violated the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA") by failing to pay him and other workers similarly situated one and a half times their regular hourly rate for all hours worked in excess of 40 hours per week. He asserts an FLSA collective action under 29 U.S.C. § 216(b) and a class action for violations of the NMMWA under Federal Rule of Civil Procedure 23. *See* First Am. Class/Collective Action Compl. ("FAC") ¶¶ 6-7, 63-91, Dkt. No. 61. Cruz filed a *Motion for Rule 23 Class Certification* (Dkt. No. 178) in which he asks the Court to certify a class in connection with the NMMWA claim. The motion is fully briefed. *See* Resp., Dkt. No. 182; Reply, Dkt. No. 183. Having reviewed the briefs, evidence, and applicable law, and having conducted the requisite rigorous analysis, the Court finds that Cruz has satisfied the burden of affirmatively demonstrating that the Rule 23 requirements are met. Accordingly, the Court will grant the motion and certify the Rule 23 class.

## I. BACKGROUND

AerSale provides maintenance, repair, and overhaul ("MRO") services on aircraft and their components for aircraft owners and operators. FAC ¶¶ 17, 23, Dkt. No. 61; Answer ¶¶ 17, 23, Dkt. No. 63; Russi-Machado Decl. ¶ 3, Dkt. No. 182-1. AerSale used staffing companies for administrative functions such as matching candidates to job descriptions and for onboarding, recruiting, screening, interviewing, and hiring. *See* Russi-Machado Dep. 113:8-14, Dkt. No. 178-3; B.J. Strahan Dep. 68:3-12, Dkt. No. 178-4. Although AerSale staffed workers, including aircraft mechanics, from various staffing companies, the workers are all subject to AerSale's supervision. *See* FAC ¶¶ 25-27, Dkt. No. 61; Answer ¶¶ 25-27, Dkt. No. 63; Russi-Machado Dep. 51:3-25, Dkt. No. 178-3; Russi-Machado Decl. ¶ 3, Dkt. No. 182-1.

Cruz is an aircraft mechanic who worked in AerSale's facility in Roswell, New Mexico. *See* FAC ¶¶ 1-2, Dkt. No. 61; Answer ¶¶ 1-2, Dkt. No. 63; Russi-Machado Decl. ¶ 5, Dkt. No. 182-1. He was an AerSale employee. FAC ¶ 15, Dkt. No. 61; Answer ¶ 15, Dkt. No. 63.[1] He and the other proposed class members ("Class Members") similarly performed AerSale's regular work of repairing and doing maintenance on airplanes with the same supervisory structure. *See* Russi-Machado Dep. 60:11-18, 81:1-4, Dkt. No. 178-3. Employees hired directly by AerSale worked in teams alongside employees hired by staffing companies, with the only distinction being that they wore different colored shirts. *See id.* 80:4-25, 82:8-83:13.

Cruz worked for AerSale through the staffing company Launch Technical Workforce Solutions, LLC ("Launch"). Russi-Machado Decl. ¶ 5, Dkt. No. 182-1. The staffing company Hire Aviation Staffing Solutions, LLC ("Hire Aviation") never assigned work to Cruz. *See id.*

[1] For purposes of class certification, AerSale does not challenge its status as an "employer" of Plaintiffs. Def.'s Resp. 2 n.1, Dkt. No. 182.

Through its staffing agencies, AerSale paid Cruz and other Class Members an hourly taxable rate plus a per diem non-taxable wage for the regular 40 hours worked. *See* J.D. Strahan Dep. 88:13-91:17, Dkt. No. 178-2; Falzone Dep. 24:21-26:10, Dkt. No. 178-5. Their overtime rate was equal to the sum of the taxable hourly rate and the per diem hourly rate. *See* J.D. Strahan Dep. 88:13-91:17, Dkt. No. 178-2; Falzone Dep. 24:21-26:10, Dkt. No. 178-5. According to AerSale, it applied the per diem rate to non-local workers who lived more than 50 miles from the AerSale work location. *See* Russi-Machado Decl. ¶ 4, Dkt. No. 182-1; Falzone Dep. 24:21-26:10, Dkt. No. 178-5.

Even though Cruz was paid by Launch, he was paid the same way as the Class Members paid by Hire Aviation. *See* Russi-Machado Dep. 145:7-146:3, Dkt. No. 178-3. Cruz's "taxable" wages were approximately $12 per hour, and he also received a "Per Diem" wage. *See* Earnings Statement, Dkt. No. 178-7. The Per Diem wage maxed out at 40 hours in a workweek. Moulton Decl. ¶ 22, Dkt. No. 178-1. When Cruz worked more than 40 hours per week, he received a taxable regular rate of $12 per hour, $560 per diem, and overtime at $27 per hour. *See* Earnings Statement, Dkt. No. 178-7 at 1 of 2.

Cruz filed a complaint against AerSale on November 10, 2022. Compl, Dkt. No. 1. Cruz subsequently filed his First Amended Class/Collective Action Complaint, asserting that AerSale's payment policy violates the FLSA and NMMWA. FAC ¶ 57, Dkt. No. 61. According to Cruz, AerSale paid him a regular wage of $26 per hour for all hours worked, including over 40 hours in a workweek, but he, like other workers, did not receive overtime based on the regular rate of approximately $26 per hour, which was the proper basis for the overtime calculation. *See id.* ¶¶ 3, 5, 33-34, 49-51. He contends that his overtime rate was his straight time rate, not the time and a half required for overtime pay. *See id.* ¶¶ 46-57, 88-90.

For its part, AerSale contends that it properly paid Plaintiff and other workers in accordance with the NMMWA. Def.'s Resp. 2, Dkt. No. 182. AerSale asserts that the workers received an hourly regular pay rate over the minimum wage, and that non-local workers' additional amount in per diem was for reimbursed expenses relating to travel that do not exceed the maximum travel reimbursement under the IRS guidelines. *See* Russi-Machado Decl. ¶ 4, Dkt. No. 182-1; J.D. Strahan Dep. 76:10-13, Dkt. No. 182-3.

During discovery, AerSale filed third-party complaints against multiple staffing companies for breach of contract, contribution, and indemnification related to the claims for unpaid overtime. *See* Third-Party Compl., Dkt. Nos. 16, 66. The Court severed some of the third-party claims and others settled. *See* Mem. Opinion and Order, Dkt. No. 114; Clerk's Minutes 2, Dkt. No. 108; Clerk's Minutes 1, Dkt. No. 164; Notice, Dkt. No. 187. On September 24, 2025, Plaintiffs notified the Court that they had settled with third-party defendant Launch. Clerk's Minutes 1, Dkt. No. 164. Cruz, in a no-fault release, released his claims against Launch and AerSale, except that he retained the right to seek unpaid wages (but not liquidated damages) in an amount not to exceed $2,500. Russi-Machado Decl. ¶ 6, Dkt. No. 182-1.

Cruz subsequently filed his *Motion for Rule 23 Class Certification* ("Rule 23 Motion"), seeking to certify the following class:

> All hourly employees of AerSale in New Mexico who were staffed by Hire Aviation and who were paid hourly plus per diem (the "Class Members") at any time since November 11, 2019 through the present.

Rule 23 Mot. 3, Dkt. No. 178 (internal footnote omitted). According to Cruz, most of the Class Members are already covered by settlement agreements, so the only subset of the original class that remains are Class Members staffed through Hire Aviation. *Id.* Cruz contends that, because AerSale treats its staffed employees the same regardless of which staffing company provided the

workers, the "limitation" in the proposed class is simply for identification purposes. *Id.* n.1. Cruz asserts that all elements required for Rule 23 class certification are satisfied.

## II. LEGAL STANDARDS

An employee may bring an action under the NMMWA on behalf of other similarly situated employees. N.M. Stat. Ann. § 50-4-26(D). The parties agree that Rule 23 governs class certification in NMMWA cases. *See* Rule 23 Mot. 10-11, Dkt. No. 178; Def.'s Resp. 4 n.3, Dkt. No. 182. *See also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010); *Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 668 (D.N.M. 2020).

Rule 23 allows certification of a class action if the trial court finds that Rule 23(a)'s four prerequisites and at least one of the three options allowed under Rule 23(b) are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). First, Rule 23(a) requires the party seeking certification to show that

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* (quoting Fed. R. Civ. P. 23(a)). A plaintiff must meet all four Rule 23(a) requirements to certify a class. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 564 U.S. at 349. Consequently, the numerosity, commonality, typicality, and adequate-representation requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotations omitted).

Second, the party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (quoting *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013)). Here, Plaintiff seeks certification under Rule 23(b)(3). *See* Rule 23 Mot. 18, Dkt. No. 178. Rule 26(b)(3) requires "[1] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

These requirements "are heavily scrutinized and strictly enforced*."* *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). The "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original). The court must undertake a "rigorous analysis" to convince itself that Rule 23 is fully satisfied. *Id.* A trial court may consider the claims' merits at the certification stage only insofar as those substantive issues overlap with Rule 23's procedural requirements. *See id.* at 351-52.

## III. ANALYSIS

### A. Cruz has satisfied the Rule 23(a) certification standard.

As for the Rule 23(a) requirements, AerSale does not challenge the numerosity requirement.[2] Instead, it argues that Plaintiffs cannot meet the commonality, typicality, and adequate-representation requirements. *See* Def.'s Resp. 7-12, Dkt. No. 182.

[2] Plaintiff asserts there are at least 170 Class Members. *See* Rule 23 Mot. 4, Dkt. No. 178; Moulton Decl. ¶ 21, Dkt. No. 178-1. *See also* J.D. Strahan Dep. 88:3-21, Dkt. No. 178-2 (not disputing that there are 185 class members).

**1. Commonality**

**a. Legal Standard**

Commonality demands proof of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff must show that the class members suffered the same injury. *Dukes*, 564 U.S. at 349-50. The focus is less on the common questions but whether there are common answers that are "apt to drive the resolution of the litigation." *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Dukes*, 564 U.S. at 350). These common issues must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Commonality does not require "that all issues must be identical as to each member." *Felps*, 336 F.R.D. at 670 (quoting *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 414 (S.D.N.Y. 2013)). Thus, a successful plaintiff must "identify some unifying thread among the members' claims that warrants class treatment." *Id.* In cases involving employment policies, the unifying thread satisfying Rule 23(a)(2) may be found by examining whether the challenged policy is common to the class as a whole, whether the proposed class members share similar job duties, and whether the company-wide policy injured the proposed class. *See id.* at 670-72; *Flores v. Anjost Corp.*, 284 F.R.D. 112, 125-26 (S.D.N.Y. 2012).

**b. Parties' Arguments**

In his motion, Cruz identifies the common question as whether AerSale misclassified Cruz and the Class Members as contractors when they were really employed by AerSale, *See* Rule 23 Mot. 13-15, Dkt. No. 178. At this stage, AerSale does not contest that it is an employer for purposes of compliance with the NMMWA. Def.'s Resp. 8, Dkt. No. 182. Instead, it argues that Plaintiff framed the wrong question that needs to be answered. *Id.* According to AerSale, the proper

question "is whether the per diem paid to each employee should have been included in the regular rate of pay for purposes of calculating the overtime rate." *Id.* at 8-9. AerSale contends that this question requires an individual assessment of whether the per diem was a reimbursement for each employee in each workweek. *Id.* at 9. Cruz counters that the per diem question does not turn on individual questions. In his view, whether Aersale's per diem payments were in fact regular, hourly wages is a common question to the class. *See* Pl.'s Reply 1-2, Dkt. No. 183. Cruz asserts that the answer to that question can gut AerSale's affirmative defense on a class-wide basis. *Id.* at 2.

**c. Commonality Findings**

Under the NMMWA, an "employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's *regular hourly rate of pay* for all hours worked in excess of forty hours." N.M. Stat. Ann. § 50-4-22(D) (emphasis added). When two statutes like the FLSA and NMMWA cover the same subject matter, courts should "attempt to harmonize and construe them together in a way that facilitates their operation and the achievement of their goals." *New Mexico Dept. of Labor v. A.C. Elec., Inc.*, 1998-NMCA-141, ¶ 20, 125 N.M. 779, 965 P.2d 363. The proper determination of the employee's regular rate of pay is of "prime importance" in calculating the amount of overtime wages that is owed to the employee. *Sharp v. CGG Land (U.S.) Inc.*, 840 F.3d 1211, 1214 (10th Cir. 2016) (quoting *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 704-05 (10th Cir. 2014)). The regular rate includes all remuneration for employment paid to the employee, subject to certain exceptions, which as relevant here includes travel expenses that are not made as compensation for hours of employment *See id.* at 1214-15. *See also* 29 U.S.C. § 207(e)(2) ("the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for

employment paid to, or on behalf of, the employee, but shall not be deemed to include … reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment”). Where, however, an employer ties per diem payments to the number of hours worked, the per diem payments are part of the regular rate. *Sharp*, 840 F.3d at 1215-16. The “regular rate” is not based on the label given to it; rather, it is an actual fact based on a mathematical computation – all payments that the parties agreed shall be received regularly during the workweek, exclusive of overtime payments, divided by hours worked. *See Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010).

Cruz has come forward with evidence that AerSale, through its staffing agencies, had a policy of paying employees a per diem rate tied to the hours worked by the employees. The question of whether that policy existed presents a question of fact common to the class. The answer to the factual question in turn makes the legal question – whether that policy was lawful – applicable to each member of the putative class. Additionally, the question of whether Cruz and the Class Members are employees subject to the NMMWA is likewise a common question, given the evidence of their similar treatment. Because the answers to the factual and legal questions are likely to drive the resolution of the litigation, Cruz has met the commonality requirement.

**2. Typicality**

**a. Legal Standard**

Typicality requires that “the claims or defenses of the representative parties [be] typical of the claims or defenses of the class.” Fed. R. Civ. P. 23(a)(3). Although the claims need not be

identical, the class representatives must generally "possess the same interest and suffer the same injury" as the unnamed class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). As other courts have explained, typicality requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Orr v. Shicker*, 953 F.3d 490, 500 (7th Cir. 2020) (quoting *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011)). In practice, this inquiry tends to merge with the commonality analysis because both focus on "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. Typicality allows for some factual differences in the interests and claims of the named plaintiff and the putative class members so long as the claims of the class representative and putative class members are based on the same legal or remedial theory. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198-99 (10th Cir. 2010).

**b. Parties' Arguments**

AerSale asserts that Cruz's claim is not typical of the Class Members' claims because each requires an individualized finding as to whether the member's per diem pay was a reimbursement for an expense related to travel. Furthermore, AerSale insists that, because Cruz was paid through Launch, not Hire Aviation, his claim is atypical. Finally, it urges the Court to find that Cruz's settlement for all but a nominal amount of damages proves that his claim is not typical of the class. AerSale points out that, of the Class Members, all are seeking liquidated damages, in contrast to Cruz, and only 19 are seeking less than $2,500.

For his part, Cruz argues that his claims are typical of the class because they are based on the same legal theory – violation of the NMMWA's overtime requirement by misclassifying Class

Members as contractors and denying them the proper overtime rate. Additionally, he emphasizes that they all seek the same remedy of unpaid overtime wages. As for his settlement, Cruz explains that his damages are sufficiently sizeable, and liquidated damages under the NMMWA are automatic without the need for additional proof, so his claim is representative of the claim of each Class Member.

**c. Typicality Findings**

Here, Cruz provided evidence that AerSale paid him and other Class Members according to the same per diem policy and treated them similarly as employees but misclassified them as contractors. The Court is not convinced that each claim hinges on an individualized finding as to whether each member's per diem pay was a reimbursement for an expense related to travel. Instead, their claims are based on the same legal theory under the NMMWA, and they seek the same remedy of unpaid wages. Although there are some individual factual differences, they do not overcome the interrelatedness of the claims of Cruz and the Class Members.

AerSale's argument that Cruz's claim cannot be typical when he was paid by Launch, rather than Hire Aviation, is superficially appealing, but ultimately lacking in merit. Cruz has presented evidence that AerSale paid its employees, including Cruz and the Class Members, using a widely applicable per diem policy through multiple staffing agencies. *See* Russi-Machado Dep. 21:20-22:8, Dkt. No. 178-3; J.D. Strahan Dep. 88:13-91:10, Dkt. No. 178-2. Cruz and the Class Members worked in New Mexico full-time, were assigned to an AerSale location, worked alongside each other doing similar work that AerSale always needed, and had the same supervisory structure, despite getting paid through different staffing companies. *See* Russi-Machado Dep. 50:6-24, 60:2-18, 116:14-117:3, Dkt. No. 178-3. AerSale tracked its workers' time, including for Cruz and the Class Members. *Id.* 89:7-16. The same legal theory underlies all the claims, and the main

issue pervades all the claims – whether the "per diem" labeled payments were actually hourly regular wages that should have been the basis of the overtime calculations. Cruz's claim is thus typical of the class.

Finally, Cruz and the Class Members seek the same relief of unpaid overtime wages. The NMMWA provides for "unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages." N.M. Stat. Ann. § 50-4-26(C). While the amount of unpaid wages will vary, the damages are based on the same general injury. As Cruz points out, the § 50-4-26(C) additional damages are a simple calculation based on the unpaid wages. Aersale did not identify a separate defense to the liquidated damages that would render Cruz's position meaningfully different. Furthermore, that Cruz's damages are less than those of many of the Class Members also does not render his claim atypical such that he could not represent the group. *Cf. Bustillos v. Board of County Comm'rs of Hidalgo County*, 310 F.R.D. 631, 670 (2015) ("Even though some plaintiffs may be entitled to more damages than others, all of the Plaintiffs' and proposed class members' claims are based on the same legal theory—that they performed uncompensated work. The proposed class members share this with the named plaintiffs, thus satisfying the typicality requirement.").

**3. Adequacy of Representation**

**a. Legal Standard**

Adequacy of representation requires that the named plaintiff show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To be legally adequate, the named plaintiff and their counsel must be free of conflicts of interest with other class members and must demonstrate the capacity to "prosecute the action vigorously" on behalf of the class members. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88

(10th Cir. 2002). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *E. Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotations omitted).

**b. Parties' Arguments**

Cruz asserts he can fairly and adequately represent the class because his interests are typical of, and fully aligned with, those of the Class Members, he has no conflict of interest with them, and Class Counsel has extensive experience in complex cases to include class proceedings for unpaid wages. AerSale does not challenge the adequacy of Cruz's counsel; rather, it contends that Cruz is not an adequate representative. According to AerSale, Cruz has only a nominal interest in the proceedings and, because Hire Aviation did not pay him, he cannot show that he would vigorously pursue the claims or that he has the same interest and injury as the Class Members.

**c. Adequacy-of-Representation Findings**

As an initial matter, the Court sees no potential conflict of interest that causes it concern over Cruz serving in a representative capacity or his attorneys representing the Class Members' interests. Further, AerSale concedes the adequacy of Class Counsel. Indeed, the record reflects that Plaintiff's counsel has considerable class action litigation experience, including in wage-and-hour cases. As for vigorous advocacy by Cruz, the Court disagrees with Defendant's characterization of Cruz's interest as "nominal" based on the cap of $2,500 in unpaid wages. Those amounts are more than trifling or existing in name only. *See Nominal*, Black's Law Dictionary (12th ed. 2024). Moreover, as AerSale itself points out, 19 potential Class Members have damages less than that amount, *see* Def.'s Resp. 10-11, Dkt. No. 182, so Cruz's damages are not atypical. Cruz has also shown vigorous advocacy in the litigation to date. For the reasons discussed *supra*,

the Court finds that Cruz has the same legal interest and injury as those of the Class Members. Accordingly, the Court finds the adequacy requirement under Rule 23(a)(4) satisfied.

### B. Cruz has met his burden under Rule 23(b)(3).

Turning to Rule 23(b), Cruz seeks certification under Rule 23(b)(3), which requires showing predominance and superiority.

#### 1. Predominance

##### a. Legal Standard

The predominance factor is related to, but more demanding than, the commonality requirement. *Naylor Farms*, 923 F.3d at 789. The purpose of Rule 23(b)(3) is to "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." Fed. R. Civ. P. 23, Advisory Committee Notes, 1966 Amendments. To animate this purpose, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Performing this test requires understanding the relationship between the common and individual questions presented in the case. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

"An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotations omitted). Not all elements of the claim must be common, but the common issues must be more prevalent or important than the individual ones. *Naylor Farms*, 923 F.3d at 789. Accordingly, a court first must characterize the issues as common or not and then weigh which issues predominate. *Id.* At least one common issue must

predominate to satisfy Rule 23(b)(3), "even if there remain individual issues, such as damages, that must be tried separately." *Id.*

**b. Parties' Arguments**

Cruz identifies two common issues that he says predominate: (i) whether he and the Class Members are employees of Aersale and (ii) whether the way they were all paid resulted in them receiving "straight time for overtime" in violation of the NMMWA. According to Cruz these common elements are susceptible to class-wide resolution using the same evidence of AerSale's policies and procedures, time records and daily work logs, payroll records, personnel records, company badges, and training records.

For its part, AerSale contends that individual questions predominate as to whether per diem was a legitimate reimbursement for travel expenses. Consequently, it insists that evidence will need to be presented for each employee for each pay period.

**c. Predominance Findings**

The predominance inquiry "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The NMMWA requires that employers pay an employee "one-half times the employee's regular hourly rate of pay" for all hours that the employee works over 40 hours in a seven-day week. N.M. Stat. Ann. § 50-4-22. To prevail on a NMMWA claim, plaintiffs must establish that "(a) they worked more than forty hours a week, (b) that management knew or should have known that they did so, and (c) that they were not compensated for the overtime." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 15, 126 N.M. 396, 970 P.2d 582, 589. The term "employer" includes any corporation "employing one or more employees at any one time, acting directly or indirectly in the interest of an employer in relation to an employee." N.M. Stat. Ann. § 50-4-21(B).

As an initial matter, AerSale attempts to take the "employer" issue out of consideration by not challenging its status as an "employer" for class certification purposes. Def.'s Resp. 2, Dkt. No. 182. It maintains, however, that Plaintiffs must prove it was an "employer" for purposes of establishing liability. *Id.* "Commonality—whether a common question is capable of classwide resolution—is not undermined when a party concedes an issue, or the issue is resolved in the plaintiffs' favor." *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 458 (6th Cir. 2020). "Even resolved questions continue to implicate the 'common nucleus of operative facts and issues' with which the predominance inquiry is concerned." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006). Consequently, AerSale's limited concession that it is an "employer" for purposes of this round of briefing does not eliminate the Court's consideration of the element when determining whether common issues predominate. *Cf. id.* ("That the class-wide proof comes in the form of a simple concession rather than contested evidence certainly shortens the time that the court must spend adjudicating the issue, but it does nothing to alter the fundamental cohesion of the proposed class, which is the central concern of the predominance requirement.").

As to whether AerSale was the employer of Cruz and the Class Members under the NMMWA, New Mexico follows the "economic reality" test, considering "pay, contract, control and voluntary action" as part of the "total employment situation which disclose the economic reality." *Garcia v. American Furniture Co.*, 1984-NMCA-090, ¶¶ 17-18, 101 N.M. 785, 689 P.2d 934. New Mexico courts find guidance too in FLSA law as to the meaning of "employ." *Id.* ¶ 13. The Tenth Circuit applies a six-factor "economic reality" test:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (citation omitted). As the record reflects, the proof for many of these factors, including AerSale's control over Cruz and other aircraft mechanics, the degree of skill required, and how integral the work was to the business, are susceptible to generalized, class-wide proof. *See*, *e.g.*, Russi-Machado Dep. 51:3-52:14, Dkt. No. 178-3 (testifying that Cruz and Class Members were assigned to locations controlled by AerSale, AerSale controlled activities performed at work sites, and these workers were subject to AerSale's onsite supervision, including hours worked, schedules, procedures, and manner of work). And if AerSale later decides to extend its concession to liability, that class-wide proof becomes even simpler.

With respect to the per diem pay policy, evidence of AerSale's policy and procedures is common to all class members. For example, there is evidence that AerSale had a policy that non-local employees received per diem, and that Cruz and the putative class members who were non-local workers were all paid the same way. *See* Russi-Machado Dep. 38:25-41:2. Dkt. No. 178-3; J.D. Strahan Dep. 88:13-91:17, Dkt. No. 178-2. The Court finds unavailing AerSale's argument that the common payment methodology does not predominate because "it is *possible* that per diem for one employee was a legitimate reimbursement for a travel expense, while it may not have been for another employee." Def.'s Resp. 13, Dkt. No. 182 (emphasis added). Cruz has submitted evidence of a policy applicable to him and to all Class Members. AerSale's suggestion of the mere possibility of individual proof does not undercut Cruz's showing.

In sum, the salient NMMWA issues here – whether Cruz and the Class Members were employees and the per diem pay policy – lend themselves to class-wide, generalized proof. The Court finds that Cruz has made a sufficient showing of predominance. *Cf. In re Nassau*, 461 F.3d at 228 ("[W]hen plaintiffs are allegedly aggrieved by a single policy of defendants, such as the

blanket policy at issue here, the case presents precisely the type of situation for which the class action device is suited since many nearly identical litigations can be adjudicated in unison."); *Felps*, 336 F.R.D. at 675-76 ("Courts routinely have found predominance where, as here, the challenged policy is common to the class as a whole and the proposed class members share similar job duties.") (and cited cases).

**2. Superiority**

**a. Legal Standard**

Rule 23(b) provides four factors for courts to consider in determining whether collective treatment is the superior means of adjudication:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Rule 23(b)(3)(A)–(D).

**b. Parties' Arguments**

First, Cruz contends that members of the class are unlikely to litigate their claims individually due to a lack of resources and not knowing about the claims. Cruz additionally asserts that managing the class action will promote efficiency because the claims are based on a single, uniform policy. According to Cruz, this forum is desirable because the proposed class covers AerSale's workers in New Mexico staffed by Hire Aviation and paid per diem and the uniformity of the claims will reduce the likelihood of difficulties arising.

In arguing against the superiority of a class action, AerSale again focuses on the individualized issues – whether each employee's per diem payments were reimbursements for traveling expenses and damages. AerSale argues that the Court will need to have mini trials for each putative class member on both the merits and damages.

**c. Superiority Findings**

With respect to the first and second factors, there is no evidence before the Court indicating that any Class Members wish to control the litigation separately or have begun other litigation about this issue. As Cruz's Damage Model table shows, many of the potential class members have relatively small amounts of damages, decreasing the likelihood each would file individual lawsuits. *See* Pl.'s Ex. 9, Dkt. No. 178-9. *Cf. Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 622-23 (C.D. Cal. 2015) (explaining that class action is superior method of adjudication where recovery on individual basis would be dwarfed by cost of litigating and when few class members would have meaningful redress because few potential class members could afford to undertake individual litigation); *Stinson v. City of New York*, 282 F.R.D. 360, 383 (S.D.N.Y. 2012) ("[W]ithout class certification, it is likely that the constitutional violations Plaintiffs allege would go unadjudicated, as many of the potential class members do not possess the knowledge or resources to prosecute a lawsuit, and the relatively small amount of damages suffered by each individual plaintiff decreases the possibility of individual lawsuits being filed."). Third, the locus of the harm is in New Mexico. Litigating the class action in this District is desirable based on New Mexico's public interest in the adherence to its laws. Fourth, as discussed *supra*, the common legal theory outweighs the individual issues, and litigating the case as a class action will promote efficiency and uniformity of result. *Cf. Rodriguez v. Peak Pressure Control, L.L.C.*, No. 2:17-cv-00576-JCH-JFR, 2020 WL 3000415, *18 (D.N.M. June 4, 2020) (finding desirability of forum

factor met because judicial economy supported aggregation of numerous NMMWA claims rather than numerous individual claims and locus of harm occurred partially in New Mexico). The record does not indicate difficulties in managing the class action. As applied here, the Rule 23(b)(3) factors favor collective treatment.

## IV. CONCLUSION

For all the foregoing reasons, Cruz has satisfied his burden to demonstrate the Rule 23(a) and Rule 23(b)(3) factors are met. The Court will therefore grant his request for class certification, appoint him as Class Representative, and appoint his counsel to serve as Class Counsel.

Additionally, Cruz requests the Court approve and direct his proposed notice (Exhibit 8) "to the Class via mail, email, and text message." Pl.'s Mot. 22, Dkt. No. 178. AerSale offered no specific objection to the terms or form of the proposed notice. Having reviewed the proposed notice, the Court finds that it satisfies Rule 23(c)(2)(B).

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Rule 23 Class Certification* (**Dkt. No. 178**) is **GRANTED**. It is further ordered that:

1. This case is conditionally certified as a class action under Rule 23. The class is defined as: "All hourly employees of AerSale in New Mexico who were staffed by Hire Aviation and who were paid hourly plus per diem at any time since November 11, 2019 through the present."
2. Plaintiff Cruz is appointed as Class Representative.
3. Counsel for Plaintiff is appointed to serve as Class Counsel.
4. Within 30 days of the filing of this Order, Plaintiff must provide individual notice to all putative members of the Class by First Class U.S. Mail, by email, and by text message using the proposed Notice Form as set forth in Exhibit 8.

5. Unless the parties agree otherwise, the putative members of the Class shall have 45 days after the Notice Form is transmitted to opt out of the Rule 23 Class.
6. Within 14 days of the opt-out period closing, the parties shall jointly file a revised Joint Status Report with their proposal for conducting any additional discovery, establishing a pretrial motions deadline, and scheduling the trial of this action.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***